IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSE ANGEL LOPEZ AND MICHAEL JAMES LYONS, Individually and on behalf of all others similarly situated<br><br>*Plaintiffs,*<br><br>v.<br><br>ALLIS-CHALMERS ENERGY INC., ALLIS-CHALMERS TUBULAR SERVICES LLC F/K/A ALLIS-CHALMERS TUBULAR SERVICES, INC., AND ARCHER TUBULAR SERVICES LLC<br><br>*Defendants* | § § § § § § § § § § § § § § § § § § § | Civil Action No. 2:11-cv-353 |

### AFFIDAVIT OF ENOLDO LEYVA

BEFORE ME, the undersigned authority, appeared, Enoldo Leyva known by me to be the person whose name is subscribed to this Affidavit, who, being duly sworn by me, testified as follows:

"My name is Enoldo Leyva. I am over the age of twenty-one, of sound mind and am competent to make this affidavit, have personal knowledge of the facts contained herein, and they are true and correct.

I live at 1617 Cimmaron, Apt. 5H, Portland, Texas 78374.

I was employed by Allis-Chalmers Tubular Services from approximately November 2010 through April 2011 as a floor hand and laborer. I performed basic labor functions, such as painting,

sanding, and helping handle pipe and casing. I did not receive the federally mandated time and a half pursuant to the Fair Labor Standards Act for all pay after forty (40) hours per workweek.

I routinely worked from Sunday through Sunday, and stayed at the drilling rig (or other offsite) location through the week living in a pick up truck owned by "Allis-Chalmers" on site. Some weeks, we would work less than the whole week. Occasionally, we would work only in the Corpus Christi yard. I (and other employees like me) was required to arrive at the Allis-Chalmers yard at Flato Road in Corpus Christi, and sign-in into work on a sign-in sheet. Then, an Allis-Chalmers supervisor would load us (typically six of us) into a pick up truck and drive us to the work location. On the way, we would stop by a store and would be given bread, water, and one package of ham by Allis-Chalmers. We would be left at the location for up to a week, with only a pick up truck to sleep in. When we ran out of ham, we had only bread to eat and water to drink. We would sometimes get a break of a few hours, when we would try to sleep or rest, but we had no set hours for rest or sleep and would be pulled out frequently and required to work at moment's notice.

Usually, the same foreman or supervisor who drove us out to the location would be responsible for submitting our hours worked for payroll when we worked outside the yard. We were not allowed to write down how many hours we worked—the foreman would decide how many hours to give us for the week. We were not paid for all the hours we were actually at the location or working, and we never got overtime pay. And it was never explained to us how our hours were determined. When we worked in the Corpus Christi yard, we were allowed to sign in and out. This was the only instance when I was allowed to record my actual time worked.

I do not recall whether I was required to sign an "independent contractor agreement" prior to my employment with the Allis-Chalmers Defendants, but do recall having to sign some documents that were in English, which I could not read. When I inquired about getting overtime wages, I was told by Allis-Chalmers personnel that I was a probationary employee for six months

and could not qualify for overtime pay until I worked for at least six months. I was never promoted to getting overtime pay and merely received straight hourly pay, regardless of how many hours I actually worked in a week.

During the time I was an "independent contractor," Allis-Chalmers either determined or were responsible for every factor in the profit or loss equation of its oilfield services business as I did not have any substantial investment in the business of Allis-Chalmers and I was simply paid for services rendered. I worked exclusively on jobs secured by Allis-Chalmers. Allis-Chalmers supplied all of the tools and major equipment needed for jobs and did not charge me for the use of those items. In addition, Allis-Chalmers supplied the materials used for the jobs on which I worked. Allis-Chalmers determined the fees and costs paid by its customers and in turn its customers paid Allis-Chalmers for the work done. Moreover, I performed my services under the name of Allis-Chalmers and the services performed were directly integrated into Allis-Chalmers' business.

I am personally aware of many other laborers who were treated the same by Allis-Chalmers, and the practices I describe in this affidavit appeared to be applied to many laborers like me and the crews and men I worked with.

I declare under penalty of perjury that the foregoing is true and correct."

FURTHER AFFIANT SAYETH NOT.

_____
Enoldo Leyva

SWORN TO AND SUBSCRIBED before me the undersigned authority on this the 28th day of February 2012.



NOTARY PUBLIC

JESUS J. DOMINGUEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-27-2012