IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSE ANGEL LOPEZ AND MICHAEL JAMES LYONS, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 2:11-CV-00353 |
| ALLIS-CHALMERS ENERGY INC., ALLIS-CHALMERS TUBULAR SERVICES LLC F/K/A ALLIS-CHALMERS TUBULAR SERVICES, INC., AND ARCHER TUBULAR SERVICES LLC, | § § § § § § § § | |
| Defendants. | § | |

## **DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

### **Introduction**

Defendants are forced to file this Motion to protect them from improper, overbroad, and unnecessary "emergency" corporate representative depositions sought by Plaintiffs. Specifically, Defendants first seek an order that Plaintiffs may not proceed with their recently requested "emergency" discovery as to the merits of their claims. Late last week Plaintiffs demanded these emergency depositions, and Defendants responded by requesting that Plaintiffs withdraw the request to give the parties a chance to meaningful opportunity to discuss settlement before incurring additional litigation costs. Plaintiffs refused to agree to withdraw the emergency merits discovery requests because no concrete settlement offer had been made (notably, Plaintiffs have never made any specific settlement demand themselves), and so Defendants have now extended a basic settlement offer that renders completely moot the purported need for any merits discovery: Specifically, Defendants have offered to expand the class to ***all*** contractors within

1

Tubular Services and to pay all proper opt-in plaintiffs **_everything_** *to which they are entitled in this case, i.e., back pay and liquidated damages over a three-year limitations period, and reasonable attorneys' fees*.

Defendants do not admit to fault, but want to avoid further protracted and expensive litigation over these claims, and our hope is to bring this case to conclusion as soon as we reasonably can by offering complete relief.  Defendants now stand ready to engage in discussions about specific settlement terms, a revised notice and revised opt-in process, and providing damages-related documents as to opt-in class members so as to avoid further unnecessary discovery and litigation expenses.  Defendants certainly hope that this basic settlement offer of *complete relief* to opt-in class members will convince Plaintiffs to voluntarily withdraw their now-moot merits discovery requests.  But in the event that Plaintiffs continue to insist on "emergency" merits discovery pending the parties' negotiation of specific settlement terms, Defendants will need protection from the Court, as there would be no basis to permit "emergency" merits discovery in the face of Defendants' offer of complete relief.

Second, Defendants seek relief from Plaintiffs' recent requests for discovery into the practices of other operating subsidiaries of Allis-Chalmers Energy Inc., which is the parent holding company over the Tubular Services operating subsidiary.  In short, and as addressed in detail below, discovery into other operating subsidiaries is improper because the named Plaintiffs contracted exclusively with the Tubular Services corporate entity; performed services exclusively for the Tubular Services corporate entity; and not only have not named any other operating subsidiaries as Defendants, but have not alleged facts that would support an employment relationship between the Plaintiffs and any other operating subsidiary, as would be required for any discovery to proceed pursuant to clear U.S. Supreme Court precedent.

2

Simply put, there must be some fair and reasonable limit to the investigation that Plaintiffs are permitted to do in terms of class scope, and that limit must be drawn based on the named Plaintiffs' particular experiences and the specific factual allegations they have made (or, as here, have *not* made) regarding any alleged "single employer" theory. Here, the Court has already certified a *company-wide* class as to not only the job that the Plaintiffs themselves were retained to perform for Tubular Services (Casing Floor Hand), but two other field jobs as well (Tong Operator and Stabber). In addition, and as discussed in detail below, Defendants have recently offered to expand that class to include *all* job titles throughout *all* of Tubular Services, regardless of whether those titles are properly considered "laborers." Frankly, Defendants believe that this proposed expanded class is far more than Plaintiffs are entitled to given their limited experiences within the Tubular Services corporate entity and the lack of proof they offered with their motion for certification, but Defendants' litigation expenses are mounting and we would like settle this case, and so we desire to minimize the disputes that the Court must address.

In sum, Defendants respectfully request a protective order holding that (1) merits discovery will not occur on an "emergency" basis, and any such discovery shall occur, if at all, after the parties' forthcoming negotiations over specific settlement terms for Tubular Services contractors and in the unlikely event that the talks fail to result in a final settlement of the those claims; and (2) Plaintiffs are not entitled to take discovery of "corporate structure" issues or regarding the practices of other subsidiary companies within the Allis-Chalmers group of companies.

## **RELEVANT BACKGROUND FACTS**

The two named Plaintiffs in this matter are relatives who worked in the South Texas District of Allis-Chalmers Tubular Services LLC (n/k/a Archer Tubular Services LLC) as

3

independent contractors for periods of four–plus months and four weeks, respectively. Both named Plaintiffs signed independent contractor agreements with Allis-Chalmers Tubular Services LLC and performed services for that entity alone.

On November 1, 2011, the two named Plaintiffs filed an Original Complaint alleging FLSA violations and seeking to certify a class of "all current and former laborers who were misclassified as 'independent contractors' by Defendant Allis-Chalmers Energy Inc. who were not paid overtime compensation for time worked in excess of forty (40) hours per workweek." (Original Complaint ¶ 7.8, DEN 1)   On December 16, 2011, the Plaintiffs filed an amended Complaint (hereinafter referred to as the "Complaint") adding defendants Allis-Chalmers Tubular Services LLC f/k/a Allis-Chalmers Tubular Services, Inc. and Archer Tubular Services LLC ("Tubular Services").  (DEN 7)

On January 17, 2012, Plaintiffs filed a Motion to conditionally certify a class of "laborers" who were "misclassified" by the three named Defendants. Neither the underlying Complaint nor the Motion make any factual allegation of any policy or practice occurring outside of the named Plaintiffs' own experiences, which are limited to those in the South Texas District of the Tubular Services corporate entity.   Nor does the Complaint or Motion contain a single factual allegation regarding the basis for any assertion that the Plaintiffs performed any services for any entity other than Tubular Services.[1]

On February 7, 2012, Defendants opposed Plaintiffs' Motion for conditional certification on several grounds, including: (1) the named Plaintiffs failed to demonstrate that anyone other than themselves has any interest in joining the case; (2) Plaintiff Lopez's unique reasons and incentives for pursuing these claims means that he is not similarly situated to putative class

---

[1]   Defendant Allis-Chalmers Energy Inc. is a holding company that does not contract with any individuals for services.  (Declaration of Anderson Lee ¶ 2, attached as Exh. B to Defendants' Response to Motion for Conditional Certification)

4

members; and (3) the proposed class of all laborers employed by all three Defendants was improperly vague, overbroad, and did not consist of similarly situated persons. (Response and Opposition to Motion for Certification, DEN 14)  Although Defendants opposed certification of *any* class, they offered an alternative class consisting of all workers in the positions of casing floor hand, tong operator, and stabber who worked in Tubular Services' South Texas District since November 1, 2008. (DEN 14, p. 10)  This proposed alternative class was based on the fact that the two named Plaintiffs themselves were retained by the South Texas District and performed services in that District only and for the Tubular Services corporate entity only.

On February 8, 2012, the Court entered an Order certifying a class of all casing floor hands, tong operators, and stabbers who performed services for Tubular Services since November 1, 2008. (Order, DEN 15)  The certified class was broader than the Defendants' proposed alternative class, which had consisted of workers in Tubular Services' South Texas District only.  Defendants subsequently filed a motion for reconsideration on the ground that a company-wide class was inappropriate given that the two named Plaintiffs had been employed in the South Texas District only and had not adduced any proof – from themselves or other putative class members – that would support a company-wide class.  The Court denied Defendants' motion for reconsideration and the class remained a company-wide class. (DEN 17)

On February 22, 2012, in compliance with the Court's certification Order, Defendants produced to Plaintiffs a spreadsheet containing the names and pertinent contact information for the 150 persons who fall within the certified class.  The next day Plaintiffs' counsel sent Defendants' counsel an email requesting, on an "emergency" basis, information about other job titles within Tubular Services and further requesting corporate representative depositions broadly addressing numerous subjects.  The stated purpose of these areas of requested discovery was to

determine whether the class should be expanded beyond what this Court had already ordered. Specifically, Plaintiffs' counsel requested corporate representative depositions as to the following topics:

    (a)    the treatment of both the class and these additional job titles/workers as independent contractors;

    (b)    the relationship and/or differences between the class and these new job titles that have been disclosed;

    (c)    the identity of all job titles/classifications of persons misclassified as independent contractors at Archer and the other Allis-Chalmers defendants;

    (d)    the decision to make or treat these folks as independent contractors (who did it, when, why and how);

    (e)    whether and to what extent any of these policies differ among Archer and the other Allis-Chalmers defendants, or were dictated by or acquiesced in by the other Allis-Chalmers defendants, and

    (f)    the corporate structure of and relationship between all named defendants and the various classifications of employees.

(Email from Roger S. Braugh, Jr. to Michael J. Muskat, February 23, 2012, attached as Exh. A to Declaration of Michael J. Muskat, attached.)

Defendants considered Plaintiffs' requests and first determined that it was not worth the expense to litigate the issue of whether additional job titles within Tubular Services should properly be part of the class. Therefore, Defendants offered to stipulate to the inclusion in the class the 72 additional persons who were classified as independent contractors during the relevant time period. (Correspondence from Michael J. Muskat to Roger S. Braugh, Jr., February 27, 2012, attached as Exh. B to Muskat Decl.) Defendants have already provided to Plaintiffs' counsel a computer-readable spreadsheet containing these names and their contact information, and have further provided for Plaintiffs' counsel's review a proposed stipulated Order enlarging the class to this extent. (*Id.*) Notably, and to be clear, these additional 72

persons include *everyone* in Tubular Services who was classified as an independent contractor during the relevant time period, including even personnel who do not work in the field and really cannot be considered "laborers" falling within the scope of the Plaintiffs' original requested class. Nonetheless, as noted above, Defendants have offered this expansion because they have decided that it simply is not worth the expense of further litigating the issue of whether these people should be a part of the class.

As to Plaintiffs' requests to do discovery into the practices of "other Allis-Chalmers Defendants" and "corporate structure" issues, in fact the only "Allis-Chalmers" Defendant other than Tubular Services is Allis-Chalmers Energy Inc. (the holding company which does not contract with any individuals). Defendants can only assume that Plaintiffs are suggesting that they should be able to do discovery into the structure and operations of other operating subsidiary companies under Allis-Chalmers Energy Inc. Defendants refused Plaintiffs' request because there is no basis for such discovery, given that the named Plaintiffs performed services only for the Tubular Services corporate entity, no other operating subsidiaries are Defendants in this matter, and there are no allegations that would support discovery into the operations of these other companies. (*Id.*)

Finally, as to Plaintiffs' apparent request to immediately engage in merits discovery on an emergency basis (i.e., Plaintiffs' request for a corporate representative deposition regarding "the decision to make or treat these folks as independent contractors (who did it, when, why and how)"), Defendants responded that they would like to explore the possibility of a class-wide settlement, and were ready to engage in such discussions immediately so as to avoid further potentially unnecessary discovery and litigation expenses. (*Id.*)

7

On February 28, 2012, Plaintiffs responded to Defendants' counsel's letter.[2]  Defendants refused to withdraw their requests for corporate representative depositions regarding the practices of "other Allis-Chalmers Defendants" and "corporate structure" issues.  (*See* Correspondence from Roger S. Braugh, Jr. to Michael J. Muskat, February 28, 2012, attached as Exh. C to Muskat Decl.)  They also refused to withdraw their requests for emergency depositions into the merits of Plaintiffs' claims, apparently on the ground that Defendants had not made a concrete settlement offer and Plaintiffs anticipate a merits dispute.  (*Id.*)

On February 29, 2012, prior to the filing of this Motion, Defendants addressed Plaintiffs' concern regarding settlement by offering to pay all persons designated as contractors throughout all of Archer Tubular Services LLC, who properly opt in to the class, everything to which they would be entitled under the FLSA.   (*See* Correspondence from Michael J. Muskat to Roger S. Braugh, Jr., February 29, 2012, attached as Exh. D to Muskat Decl.)  Defendants further stated that they would forward, in the very near future, a specific proposed settlement stipulation that contains detailed provisions regarding settlement mechanics, including a preliminary court-approval process, a revised class notice and revised opt-in period, the provision of damages-related documents once the opt-in period has closed, and a final court approval process.  (*Id.*)

## ARGUMENT

**I.    There is No Need for "Emergency" Merits Depositions Because Defendants Have Offered the Plaintiffs Complete Relief.**

This Court retains full discretion throughout the case to place appropriate limits on discovery and to structure discovery to occur in an efficient way.  *See generally* Fed. R. Civ. P. 26(b).  Here, there is no need for Plaintiffs to conduct "emergency" discovery relating to the

---

[2]   At this point Plaintiffs have made only informal requests for these depositions.  No notice of deposition has been served, and thus Defendants have not made formal objections to the requests consistent with Rule 30(b)(6).

8

merits of the underlying claims and defenses, because Defendants have mooted liability issues by offering complete relief. In the unlikely event that forthcoming negotiations fail to result in a settlement agreement, or the parties have irreconcilable disputes regarding damages, there will be plenty of time for the parties to conduct relevant discovery and litigate those issues in light of the December 3, 2012 discovery cutoff.[3]

## II. There is No Basis On Which to Allow Plaintiffs to Conduct Discovery Into "Corporate Structure" Issues or Regarding the Practices of Other Subsidiary Companies Within the Allis-Chalmers Group of Companies.

### A. The class is—and should be—limited to the Tubular Services corporate entity because that entity contracted with the Plaintiffs, and the Plaintiffs did not contract with any other subsidiary company.

The two named Plaintiffs contracted exclusively with the Tubular Services corporate entity and performed services exclusively for Tubular Services. Neither Plaintiff performed services for any other operating subsidiary of Allis-Chalmers Energy Inc., none of which are even named as Defendants in this matter. These are probably the reasons why the Court conditionally certified a class of workers in Tubular Services only. This was the proper analysis because, as the courts have repeatedly held, alleged violations occurring as to a group of workers at one facility or location do not, without more, support conditional certification of a class of workers at other facilities operated by the alleged employer, let alone a class of workers *at other operating companies*. *See, e.g.*, *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp.2d 642, 652-53 (S.D. Tex. 2010) (Jack, J.) (class limited to the employer's coil tubing division because named plaintiffs failed to demonstrate that employees in divisions other than the coil tubing division were similarly situated); *Rueda v. Tecon Servs., Inc.*, 2011 U.S. Dist. LEXIS 69356, at

---

[3] Nor, of course, is there any need for Plaintiffs to take corporate representative depositions regarding job titles within Tubular Services, as Defendants have agreed to include all contractors throughout Tubular Services in the putative class and have provided Plaintiffs with a list of these contractors' job titles and the relevant contact information for the contractors themselves.

\*11-12 (S.D. Tex. June 28, 2011) ("FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice."); *Botello v. COI Telecom, LLC*, 2010 U.S. Dist. LEXIS 138572, at \*24-25 (W.D. Tex. Dec. 30, 2010) (rejecting proposed statewide class in contactor misclassification case); *see also* cases cited in Defendant's Response and Opposition to Plaintiffs' Motion for Certification of Collective Action, DEN 14, at 8-10.

Because as a matter of law the named Plaintiffs cannot purport to be similarly situated to workers at other companies, there is no basis on which to allow the requested depositions into the practices of such other companies.

**B.    To the extent Plaintiffs are now claiming that any company other than Tubular Services is liable as a "joint" or "single" employer with Tubular Services, any such (new) claim could not be the basis for discovery because it is entirely unsupported by any factual allegations and would be subject to dismissal.**

It is axiomatic that a plaintiff cannot recover against a corporate entity under the FLSA unless an employment relationship exists between the plaintiff and the entity. *See* 29 U.S.C. § 207(a)(1). Yet not only are none of Allis-Chalmers Energy Inc.'s other operating subsidiaries named as Defendants in this matter, nothing in the Plaintiffs' Complaint states *any* facts that would support an employment relationship between the named Plaintiffs and any company other than the Tubular Services corporate entity.

To the extent Plaintiffs want to argue that they should be allowed to seek discovery to see if there is support for such a theory, their argument fails under clear and forceful U.S. Supreme Court precedent. On two different occasions in just the past five years, the U.S. Supreme Court has clarified that plaintiffs cannot seek discovery on the basis of vague and conclusory pleadings. As the Court held, a plaintiff fails to state a claim upon which relief may be granted in the

10

absence of "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940. Such specificity in pleading is necessary to prevent situations where plaintiffs are able to use mere conclusory allegations to put defendants through the time and expense associated with discovery. *See Twombly*, 550 U.S. at 558; *Iqbal*, 129 S. Ct. at 1953-54 (emphasizing costs of diverting resources to discovery, even where the discovery is minimally invasive); *see also Jurek v. Williams WPC-I, Inc.*, 2009 U.S. Dist. LEXIS 51014, *15 (S.D. Tex. June 17, 2009) ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on whether limited discovery might provide a basis for the pleadings.") (quoting *Twombly* and *Iqbal*); *Fields v. Golden Rule Ins. Co.*, 2011 U.S. Dist. LEXIS 80373, *6 (W.D.N.C. July 22, 2011) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do[] not unlock the doors of discovery.").

Not surprisingly, the courts have frequently applied *Twombly* and *Iqbal* to dismiss joint employment claims when the plaintiff has not alleged any plausible facts in support of such claims. *See Cooke v. Jaspers*, 2010 U.S. Dist. LEXIS 21913, *16-17 (S.D. Tex. Mar. 10, 2010) (dismissing FLSA complaint where it "does not contain any specific allegations against [the defendant] to put it on notice that or how the plaintiffs assert successor- or joint-employer liability."); *Altier v. Worley Catastrophe Response, LLC*, 2011 U.S. Dist. LEXIS 49429, *12 (E.D. La. May 9, 2011) (dismissing FLSA claim against BP where "Plaintiffs have not pled sufficient facts for the Court to draw a reasonable inference that there was an employer relationship"); *Attanasio v. Community Health Sys., Inc.*, 2011 U.S. Dist. LEXIS 121764, at *12-

19 (M.D. Pa. Oct. 20, 2011) (same); *see also Wilkens v. Toyotetsu America, Inc.*, 2010 U.S. Dist. LEXIS 87394, at *11-15 (W.D. Tex. Aug. 25, 2010) (applying *Iqbal/Twombly* to an allegation of joint employer liability under Title VII and dismissing, with prejudice, plaintiff's claim because of the lack of factual allegations supporting joint employment); *Jurek*, 2009 U.S. Dist. LEXIS 51014, at *11-15 (denying motion for leave to amend to add three additional entities as defendants where plaintiff had named her employer as a defendant and failed to allege facts to support a claim against the additional entities under Title VII).

Here, Plaintiffs have not alleged any facts to support an employment relationship with any entity other than Tubular Services, under any theory – let alone facts that, if true, would actually entitle them to expand the class to other operating subsidiaries. Thus, any purported claim against any entity other than Tubular Services, had it even been properly asserted, would be subject to dismissal under *Twombly* and *Iqbal*. This means that Plaintiffs are not entitled to conduct discovery into the operations of operating subsidiaries for which they did not perform services. *See, e.g., Wolman v. Catholic Health Sys. of Long Island, Inc.*, 2012 U.S. Dist. LEXIS 21654, *13 n.5 (E.D.N.Y. Feb. 16, 2012) (rejecting plaintiffs' assertion that they should be entitled to discovery on the issue of joint employment and dismissing with prejudice: "Although plaintiff has not yet had the opportunity for full discovery, the factual allegations in the Amended Complaint must be sufficient to show that the proposed defendants meet the FLSA's definition of 'employer.'").

## **CONCLUSION**

Defendants look forward to discussing specific settlement terms and mechanics with the Plaintiffs. Defendant respectfully seek an Order that (1) merits discovery will not occur on an "emergency" basis, and any such discovery shall occur, if at all, after the parties' forthcoming

settlement talks and in the event that the talks fail to result in a settlement of the Plaintiffs' claims; and (2) Plaintiffs are not entitled to take discovery of "corporate structure" issues or regarding the practices of other subsidiary companies within the Allis-Chalmers group of companies. A proposed Order is attached to this Motion.

        Respectfully submitted,

        /s/ Michael J. Muskat
        MICHAEL J. MUSKAT
        Attorney-in-Charge
        State Bar No. 24002668
        S.D. Tex. Bar No. 22816
        MUSKAT, MARTINEZ & MAHONY, LLP
        440 Louisiana Street, Suite 590
        Houston, Texas 77002
        Telephone: 713-987-7850
        Telecopier: 713-987-7854

        Attorneys for Defendants

OF COUNSEL:

GABRIELLE S. MOSES
State Bar No. 24063878
ALLISON R. MAY
State Bar No. 24059281
MUSKAT, MARTINEZ & MAHONY, LLP
440 Louisiana Street, Suite 590
Houston, Texas 77002
Telephone: 713-987-7850
Telecopier: 713-987-7854

## **CERTIFICATE OF SERVICE**

    This is to certify that on February 29, 2012, a true and correct copy of this pleading has been served on Plaintiffs' counsel of record via the Electronic Case Filing system.

        /s/ Michael J. Muskat
        MICHAEL J. MUSKAT

## CERTIFICATE OF CONFERENCE

  I certify that I communicated to Plaintiff's counsel the objections to discovery set out in this Motion and Plaintiff's counsel refused to agree to withdraw the requests at issue.

                /s/ Michael J. Muskat_____
                MICHAEL J. MUSKAT