UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


| | | |
|---|---|---|
| JOSE ANGEL LOPEZ, ET AL., | ) | CASE NO:  2:11-CV-00353 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Corpus Christi, Texas |
| | ) | |
| ALLIS-CHALMERS ENERGY, INC., | ) | Friday, April 13, 2012 |
| | ) | |
| Defendant. | ) | (2:31 p.m. to 3:22 p.m.) |


MOTIONS HEARING

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE



Appearances:            See next page

Court Recorder:         Genay Rogan

Clerk:                  Brandy Cortez

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


Plaintiffs:                    ROGER S. BRAUGH, JR., ESQ.
                               Sico White, et al.
                               802 N. Carancahua St., Suite 900
                               Corpus Christi, TX 78401

Defendant:                     MICHAEL J. MUSKAT, ESQ.
                               ALISON MAY, ESQ.
                               Muskay Martinez & Mahony
                               440 Louisiana St., Suite 590
                               Houston, TX 77002

1      <u>Corpus Christi, Texas; Friday, April 13, 2012; 2:31 p.m.</u>

2                              (Call to Order)

3             **THE COURT:**  . . . *Lopez, et al. versus Allis-*

4      *Chalmers*.

5             **MR. BRAUGH:**  Roger Braugh and Cliff Alexander for the

6      plaintiffs, your Honor.

7             **MR. MUSKAT:**  Mike Muskat and Alison May for the

8      defendants, your Honor.

9             **THE COURT:**  There are several motions pending before

10     the Court.  I think I'm going to consider the defendant's

11     motions first, and then we can consider the plaintiffs'.

12            So, I was going to first take up the defendant's

13     motion for reconsideration of the order denying the protective

14     order; and if there is anything new, I don't mind considering

15     that, but if it's something I've already looked at, you know,

16     before I made the decision on that protective order, you know,

17     I'd rather not rehash that.

18            **MR. MUSKAT:**  Understood, your Honor.

19            **THE COURT:**  Okay.  So, if there is anything new, you

20     can proceed.

21            **MR. MUSKAT:**  Okay.  And, your Honor, do you also want

22     me to address at this time our motion to refer settlement and

23     pretrial matters to the magistrate judge?

24            **THE COURT:**  We'll do that after this motion to

25     reconsider the protective order.

4

1              MR. MUSKAT:   Okay.

2          Your Honor, what I'd like to do, to give you some

3  additional context and to explain the new facts that we raised

4  in our motion for reconsideration, is to explain in more detail

5  than is set out in our papers the situation my client is in in

6  this case.  These are, relatively speaking, your Honor, low-

7  dollar-value claims relative to the cost of litigation and the

8  burdens upon my clients in contesting the claims and litigating

9  them.

10          These are primarily field personnel.  They make

11  between about 15 and 20 dollars an hour.  The vast majority of

12  them were employed for -- in this capacity, in a contractor

13  capacity, for a period of a few months.  They didn't always

14  work overtime in those weeks.  And just very roughly

15  speaking -- this is not evidence -- but very roughly speaking,

16  these claims are a few thousand dollars per plaintiff, and

17  sometimes less than that.

18          The opt-in period of the class that you certified,

19  your Honor -- you certified a class in February of three job

20  titles in the Tubular Services entity, and there were 150

21  putative class members in that class.  The opt-in period ends

22  early next week, your Honor, and there are between about 45 and

23  50 people who have opted in so far.  So, I think, you know,

24  we'll wind up somewhere around a -- probably a number of about

25  50 opt-in plaintiffs asserting claims that range from probably

1    several hundred dollars to a few thousand dollars.

2            In light of that, your Honor -- and my clients saw

3    this situation for what it was back in February, when

4    Mr. Braugh indicated that -- you may recall we had a dispute

5    about the scope of the class, and plaintiffs' counsel indicated

6    that they wanted to do additional discovery to attempt to

7    expand the class.  What my client decided at that time is that,

8    for business reasons, it is -- given the size of these claims,

9    given the number of likely opt-in class members, it did not

10   make business sense, your Honor, to continue to litigate issues

11   about the merits of the case.  And, as a result, what my client

12   did in late February was to extend an offer of complete relief

13   under the Fair Labor Standards Act.

14           **THE COURT:**  Okay.  Got all that the first time

15   around.  What is new?  After I denied your motion for

16   protective order, what's new to form the basis of the motion

17   for reconsideration?  I fully considered what you filed when

18   you filed your motion for protective order.  I've considered

19   everything you've said right now, from what I recall.

20           So, I am just asking:  Is there anything new I should

21   be looking at to decide whether I should reconsider that?

22           **MR. MUSKAT:**  Well, there's new facts -- there's --

23   the motion for protective order, as you will recall, your

24   Honor, dealt with sort of two issues, or at least two types of

25   discovery, that the other side is seeking.  One was related to

1    the merits of the case, and that's sort of what my comments

2    were directed to just then.  The other sort of set of discovery

3    that's being sought relates to attempting to expand this class

4    beyond the entity with which the named plaintiffs contract, or

5    the Tubular Services entity.

6            And we were concerned, your Honor, that in the

7    response that was filed to our motion for protective order

8    there were distortions of the record designed to create the

9    impression that there is evidence out there that would support

10   a joint employment relationship.  And we wanted to correct

11   those issues, and we did that in our motion for

12   reconsideration.

13           Our position on that, your Honor, and on this sought-

14   after discovery, is that these folks contracted with Tubular

15   Services only.  They performed no services and signed no

16   contract with any other operating subsidiary within this group

17   of companies.  And plaintiffs are right that the ultimate

18   parent company is called Allis-Chalmers Energy, Inc., and that

19   Allis-Chalmers and Allis-Chalmers Energy appear throughout this

20   chain of companies.  But the issue is that these plaintiffs,

21   having not performed services and not contracted with any other

22   operating subsidiary, have no basis to seek to certify a class

23   that is any larger than what we have offered, your Honor, which

24   is everyone in Tubular Services.  And, so, that was the other

25   basis for our motion, your Honor.

1          **THE COURT:**  Court's going to deny the motion for

2    reconsideration of the order denying the protective order.

3          So, if you want to move on to the motion for referral

4    to magistrate judge?

5          **MR. MUSKAT:**  Okay.  I will, your Honor.  And there is

6    some overlap here.  It involves some of the same concerns.

7          We have -- by our offer of complete relief, your

8    Honor, we've essentially mooted any dispute that exists about

9    the merits of the plaintiffs' claims, about whether these

10   people were misclassified as contractors.  And because of that,

11   we feel it's in the best -- certainly the best interest of my

12   clients, but also in the best interest of the class members, to

13   proceed to get these claims resolved, in the settlement

14   process, where we're not litigating the essentially moot issue

15   of whether these people were misclassified; what we're doing is

16   trying to determine the amount of back pay that's owed to each

17   putative class member or each opt-in class member.

18          And, so, what we have asked the other side to do, and

19   they have refused, is to engage in these discussions and see if

20   we can reach a settlement agreement without the necessity of

21   litigating issues that are essentially moot.  And what we would

22   like to do is have a magistrate judge assist the parties in

23   that process by doing things such as being able to schedule

24   settlement conferences, mediate settlement terms, and help the

25   parties in this process of determining the back pay owed to

1   these folks so that we can get it paid and get this case

2   resolved and not spend a bunch of time and money litigating

3   moot issues.

4          And it seemed to us that a referral to a magistrate

5   judge was particularly appropriate because we do anticipate

6   your Honor would be understandably somewhat reluctant to get,

7   you know, get heavily involved in sort of settlement issues,

8   and so it seemed to us to be appropriate that this would be a

9   very good use of a magistrate judge, who can do those things

10  and can also address the discovery issues.

11         For example, we're going to have to determine the

12  back pay owed to each class member.  You know, we will produce

13  time and pay records.  Our hope is that we will be able to

14  agree with the other side on the back pay owed to a particular

15  opt-in class member, but if we can't do that, and if there is a

16  dispute about that, there may need to be some discovery about

17  that.  And that it something that a magistrate judge, I think,

18  could help with in the context of working with the parties

19  through the settlement process.

20         Again, the goal here, your Honor -- the goal is to

21  get this wrapped up so that the class members are getting paid,

22  which we think in a timely way, which we think is in their best

23  interest.  Because if this doesn't happen, if we are -- if we

24  are forced to continue to litigate a case where we have mooted

25  the liability issue, that's not in the best interest of the

1    class members.

2            THE COURT:  But --

3            MR. MUSKAT:  What it means is --

4            THE COURT:  -- isn't that what they're here for, to

5    represent those class members and decide what's in their best

6    interest or not?

7            MR. MUSKAT:  Well, I -- yes.  That is what they're

8    charged with, your Honor.  But here is the thing; is that the

9    deal can't get any better for these folks.  Literally.  It

10   can't.  We've offered them everything that they are -- that

11   they would possibly be entitled to under the statute.  And

12   because the deal can't get any better, continued litigation

13   just has a lot of risks to it.

14           It means that we're -- that we may get into dispute

15   about discovery issues, about the reasonableness of attorneys'

16   fees; my client may decide that, hey, if we have to go through

17   this process and litigate this thing after all, well, then,

18   let's take our chances, because -- because we can't do any

19   better than what we're offering now.  And -- or rather, the

20   plaintiffs can't get any more than what we're offering now.

21   And, so, there's potential issues for appeal that are created;

22   all of which increase cost, increase expense, jeopardize a

23   potential resolution for the class members that is literally

24   ideal for them.  And, so, as a result, it seems to us to be

25   prudent to proceed through this settlement process and utilize

1    a magistrate judge to help us with that process.

2              **THE COURT:**  Okay.  Thank you.

3              **MR. MUSKAT:**  And that's the basis for the motion,

4    your Honor.

5              **THE COURT:**  Mr. Braugh?

6              **MR. BRAUGH:**  May I approach the podium, your Honor?

7              **THE COURT:**  Yes.

8              **MR. BRAUGH:**  Let me briefly address what I perceive

9    to be the same contention that was made in the motion for

10   protective order, which is:  We have offered to settle;

11   therefore, you can't look any further into our business

12   practices.  That seems to kind of be the backbone of the entire

13   argument.

14              When we were before you last time, as the Court

15   knows, the plaintiffs contended that the scope of the class

16   should have been larger.  And I think we were standing at this

17   podium side by side when defense counsel for Allis-Chalmers

18   advised the Court that, although he had initially told you that

19   the proper scope of the class would be casing floor hands,

20   stabbers, and tong operators, they said:  Well, we've been

21   looking some and there might be eight or nine more categories

22   that should be included.  And I made the argument at that point

23   in time that these other categories of employees were literally

24   standing beside one another on the rig floor, and I said, you

25   know, that's -- it's fundamental, you know, in the oilfield,

1    these guys who are working the same jobs are laborers, and I

2    asked for counsel to stipulate to that, and he refused to.

3          And what transpired after that, I think the Court has

4    seen it in motion practice, but principally what is going on

5    now is the same thing that went on at the last hearing.  And

6    that is an attempt to contain this case to a limited number of

7    enumerated employees in the South Texas Division, which was

8    represented by Archer Tubular Services, LLC.  We see, now

9    having done more research and talked to employees, talking to

10   employees who have called us, that there are more employees out

11   there who were not paid overtime properly by these entities.

12         We find them in the state of Pennsylvania, another

13   case pending, where Allis-Chalmers Energy, Inc. stipulates that

14   it is the employer of coral tubing operators who are day-rate-

15   type employees; when compared to the affidavit that has been

16   filed in your court saying Allis-Chalmers Energy, Inc. is

17   merely a holding company that's never employed anybody.  We get

18   payroll records from our own guys, our own people who are

19   coming to us, that show Allis-Chalmers Energy, Inc. on their

20   pay stubs.  We find that the trucks they are driving are

21   apparently titled in the name of Allis-Chalmers Energy, Inc.

22   according to the, at least the affidavit we have received.

23         And, so, there is, in our mind, a substantial

24   question that remains about the proper scope of this class.  We

25   believe, clearly, that since counsel for Allis-Chalmers

12

1    identified at the last hearing another, you know, I believe

2    it's eight categories of employees that should have been

3    included -- one, two, three -- I'm sorry; 12 categories of

4    additional employees that should be included -- that that's

5    something we should have had a stipulation on and the class

6    should have been expanded at that point in time.

7          Now another two months have burned off the clock.  We

8    have sent discovery trying to get to the bottom of the

9    appropriate scope of this class, who the employer really is,

10   whether this is a single enterprise, and whether under the FLSA

11   Allis-Chalmers Energy, Inc. may be deemed to be an employer,

12   and, if so, it stands to reason that there are a lot more

13   employees out there that we don't know about.

14         So, we perceive the request on this particular motion

15   to appoint a magistrate to oversee mandated settlement

16   conferences on terms dictated by a defendant who continues to

17   hide the identity of employees to be nothing more than a

18   thinly-veiled disguise saying they don't like this Court's

19   rulings so far and they hope to do better with a magistrate.

20   We don't believe it would be appropriate to force settlement

21   discussions on an important case involving a substantial

22   federal right under the FLSA without allowing us to conduct

23   discovery and prove whether or not these defendants are being

24   honest in their representations and have identified all

25   relevant class members.  We know for a fact they did not before

1    the first hearing, and we know for a fact that their settlement

2    offer is contingent and was expressly contingent upon the

3    plaintiffs' counsel agreeing that these would be the only

4    categories of employees, the ones they have identified to us,

5    not the ones we can do discovery on.  We have to accept the

6    categories they have given us.  That was a condition of the

7    settlement offer.

8              And, so, we don't believe appointing a magistrate to

9    oversee our case in this point in time is appropriate.  We

10   don't believe that mandatory, forced settlement without

11   discovery is appropriate.  And, so, we would ask to deny the

12   motion to appoint a magistrate to oversee this matter.

13             **THE COURT:**  All right.

14             **MR. MUSKAT:**  If I can respond, your Honor.

15             **THE COURT:**  Yes.

16             **MR. MUSKAT:**  I need to make something very, very

17   clear to the Court.

18             After the scheduling conference in February, we

19   offered -- this is in late February -- we offered to expand the

20   class to every contractor in Tubular Services.  That needs to

21   be crystal clear.  That was offered in February.  We sent a

22   list of those people; it's 72 people.  We sent a proposed order

23   and stipulation.  And that grouping, the Tubular Services

24   grouping, is what we have offered complete relief to.  There is

25   no basis on which to delay the settlement of those claims.

1          Now, it's a separate issue as to whether or not it's

2    appropriate to do discovery as to any other entity.  That's a

3    separate issue.  We can settle Tubular Services' claims.  The

4    class now encompasses all of them.  There's 222 people.  And

5    part of the reason why we offered the additional 72 people is

6    precisely so that we would avoid disputes about whether and

7    which job titles should be included and whether everybody in

8    Tubular Services, you know, was properly included.

9          So, we did that in February.  You know, we wanted to

10   settle those claims then.  It's not true that -- you know, it's

11   not true that somehow we haven't done that or we delayed or

12   dropped the ball in doing that.  It's just the other side has

13   refused to engage us in that.  And it seems to us that we can

14   settle those claims and deal with this other issue as to

15   whether or not they ought to be able to do discovery and try to

16   certify other classes.

17         You know, plaintiffs' counsel mentioned this case in

18   Pennsylvania.  And that's -- I'm glad he did, because the case

19   in Pennsylvania involves another operating company in this

20   group of companies, the Underbalanced Services.  The plaintiffs

21   in that case -- the only plaintiffs in that case -- are

22   plaintiffs who worked for Underbalanced Services, that

23   particular operating company.

24         And if plaintiffs' counsel thinks that there are

25   unlawful practices that have occurred in other operating

1    subsidiaries within this group of companies, then they need to

2    have a plaintiff who works for those companies and can bring a

3    lawsuit challenging that practice.

4         But what I hear plaintiffs' counsel essentially

5    suggesting is, is that, well, because they've identified these

6    folks in South Texas who worked for Tubular Services, who they

7    believe were misclassified, we now essentially get to do an

8    audit of the entire group of companies to see if there are any

9    other unlawful practices that occurred anywhere else, even

10   though none of the plaintiffs work for those other entities and

11   there's no allegations at all to support that fact.  You know,

12   if there is another operating subsidiary that has some unlawful

13   practice, all he has to have is a plaintiff who worked for that

14   subsidiary.

15        So, I just wanted that to be totally clear, and that

16   these are distinct issues.  The issue of settlement of the

17   Tubular Services employees, which there is no reason not to get

18   that done as soon as possible --

19        **THE COURT:**  Okay.  Well, he is saying that there are

20   some conditions on that settlement that are a problem.

21        **MR. MUSKAT:**  There are no conditions on settling the

22   claims of the Tubular Services class that we've proposed, which

23   is now a grand total of 222 people.  As to those 222 people, as

24   to the people who opt in, we are willing to pay them all back

25   pay they are owed for a period of three years, double it for

1   liquidated damages, and pay attorneys' fees.  And all we need

2   to do is determine what those numbers are, and we can get this

3   resolved.

4            **THE COURT:**  Okay.

5            **MR. BRAUGH:**  The settlement offer I received was, in

6   fact, conditional upon us accepting that as the scope of the

7   class.  Not only that, they are still contending that we don't

8   get to do discovery to see if they are telling the truth about

9   the identity of those people.  And, most importantly, your

10  Honor, they don't want us to discover whether or not the parent

11  company, Allis-Chalmers Energy, Inc., is, in fact, the employer

12  under the FLSA.  They won't let us do discovery regarding that.

13  So --

14           **THE COURT:**  I'm going to deny the motion to refer to

15  the magistrate judge.

16           **MR. BRAUGH:**  So, the next motion --

17           **THE COURT:**  I think there is some discovery that

18  needs to probably proceed.

19           So, next, the plaintiffs' motion for leave to file a

20  second amended complaint.

21           **MR. BRAUGH:**  Yes, your Honor.

22           We filed a motion for leave to amend our complaint

23  and to file a second amended complaint.  In that, your Honor,

24  you will note that we have altered the class definition.  We

25  have pled some very specific facts that we received in

1  affidavits from new opt-in plaintiffs, one of whom is not part

2  of the currently existing certified class; Mr. Leyva was not

3  included in the original list of 151 people supplied by Allis-

4  Chalmers.

5      We have discovered -- not through discovery at this

6  time, because we don't have answers yet -- but we have

7  discovered through our research and investigation additional

8  probable violations of the FLSA, including not getting paid for

9  all hours worked, potential overtime violations because of the

10  off-the-clock hours that haven't been counted, and others as we

11  have described in our second amended complaint.

12      The response that we received from defense counsel

13  with respect to -- and, in particular, the state law claims

14  that we have attempted to bring, claims pertaining to federal

15  taxation issues, quite honestly, your Honor, we haven't done

16  the research to adequately respond, and it may very well be

17  that defense counsel is right about those matters.

18      And, so, what we would like to do is -- and we have

19  already prepared it -- is amend our proposed second amended

20  complaint to solely reference the FLSA claims and to remove all

21  records as to state law or federal taxation claims, and so we

22  should be able to resolve that particular objection that the

23  defendants had by agreement.

24      So, the only question, then, remaining on our motion

25  for leave to file the second amended complaint is whether we

1    should be able to plead this expanded class scope and the

2    specific facts that we have been able to uncover to date in the

3    additional provisions of violations of the FLSA.  And we would

4    ask the Court's permission to do so.  We believe that

5    permission for leave to file a second amended complaint in the

6    early stages of discovery is something that should be routinely

7    granted in the interest of justice and that there is no

8    practical or good reason not to allow the amendment now that we

9    have agreed to remove the state law and other unrelated claims.

10           **THE COURT:**  All right.

11           Mr. Muskat?

12           **MR. MUSKAT:**  Your Honor, I was just informed about

13   this amendment right before the hearing and handed a copy of

14   this, so I haven't had a chance to look through it and read it.

15           **THE COURT:**  I am assuming they just deleted the state

16   law claims, what were claimed to be preempted, and everything

17   else stayed the same.

18           **MR. BRAUGH:**  And the federal taxation issues as well,

19   your Honor.

20           **MR. MUSKAT:**  So, our position, if that's what's -- if

21   that's what's occurred, our position on this is that we're not

22   opposed to the amended -- although I want to -- I want to make

23   clear that we're certainly not in agreement that the proposed

24   expanded class is appropriate that's the subject of their

25   motion to expand.  We have substantial arguments in response to

1   that that we'd like to present.

2           So -- so, we don't -- we will withdraw our opposition

3   to the second amended complaint, but just want the record to be

4   clear that we would like our opportunity to contest the

5   expanded class.

6           **THE COURT:**  Okay.  And you're certainly entitled to

7   do that.

8           **MR. MUSKAT:**  Thank you, your Honor.

9           **THE COURT:**  Then, the Court's going to grant the

10  plaintiff's motion for leave to file the second amended

11  complaint as changed or as modified --

12          **MR. BRAUGH:**  We will do so, your Honor.

13          **THE COURT:**  -- as stated.  Okay.

14          So -- but then we have the plaintiffs' motion to

15  modify the class and extend the opt-in date, correct?

16          **MR. BRAUGH:**  Yes, your Honor.

17          May I proceed?

18          **THE COURT:**  Yes.

19          **MR. BRAUGH:**  I guess first there are a lot of parts

20  to this motion and it's hard to figure out where to start

21  first.  But I think logically let me start with our existing

22  class that we have.

23          A few issues that we have had so far, we have some

24  bad addresses and we're having difficulty getting proper notice

25  out to a handful of the original employees who were identified

1  by Allis-Chalmers.  We have had a chance to actually get hired

2  by a number of new Plaintiffs who have come in and talked to us

3  who we have been able to interview.

4         And we understand that there is likely a substantial

5  language barrier for a significant portion of this class such

6  that sending out the notices to them in English, as was

7  permitted by the original order authorizing notice to be sent

8  out, it likely didn't reach some of the class members in a way

9  that was effective in a way that they could understand.

10        And so we think that setting aside expanding the

11  class, the opt-in period certainly needs to be extended.  And

12  we, of course, would like permission to translate the Court's

13  orders and notices and re-submit those to class members in

14  Spanish hoping to reach some people who may have -- not have a

15  full grasp of the English language who might be proper class

16  members.  So I'll kind of treat that as a separate issue.

17        The overall issue, your Honor, is as Allis-Chalmers

18  has conceded now in open court, there are additional class

19  members that certainly should be added.  The original class was

20  limited to the stabbers, casing floor hands and tong operators.

21  And so that was the limit of the first notice.  Although we

22  have received a list with 72 additional potential class members

23  on it, we did not and still to this day do not have the Court's

24  permission to send out notice to them.  And if we sent the

25  notice out to them, it would say this is to all former casing

1   hands, stabbers and tong operators.  And they would say:  Well,

2   I'm not one of those.

3           And so, you know, I think, in essence, there should

4   be a stipulation to expand the class to these remaining

5   72 people.  So that's kind of the second layer is that I think

6   certainly we have to expand the class based on upon Allis-

7   Chalmers now agreeing there were more people who should have

8   been given notice and we don't have authority to give notice to

9   yet.

10          I think the more contested issue is this notion of

11   sending it out and sending this notice out not to just the

12   enumerated job titles, which Allis-Chalmers has been willing to

13   say are proper class members who at least they're not going to

14   contest it.  As we stated in our initial briefing and we

15   maintain, we think the case law supports it's not the job

16   titles that matters.  The classification as a worker, what that

17   particular title might be, is not the standard for

18   certification.  It is the way these gentlemen, these workers,

19   ladies and gentlemen, were treated, the fact that they were

20   treated in violation of the FLSA.

21          And we have a substantial amount of documentary

22   evidence.  Even though we don't have full discovery or any

23   discovery, we already have pay stubs that say Allis-Chalmers

24   Energy, Inc. is their employer.  And we think that the class

25   ought to be expanded to anybody who worked for Allis-Chalmers

1    Energy, Inc. or Archer Tubular Services.

2                And, in particular, it should include people as we

3    have asked for in our notice that were either day-rate

4    employees, didn't get paid for all hours worked, had minimum

5    wage violations or weren't paid time-and-a-half for all hours

6    over 40.  And I don't think there's a need for me to read into

7    the record word for word the description, but if you look at

8    our motion on Page 8, there's an all caps bold section; and

9    that would be the scope of the description we would ask.

10               There are a few other portions of this motion which

11   we think are important.  One is the request that we be able to

12   post these notices in both Spanish and English at the work

13   places.  And secondly, that this notice be posted not only in

14   Archer Tubular Services' premises but also in all Allis-

15   Chalmers' Tubular Services field offices where employees may

16   happen to see them.

17               And I think those are probably the highlights of the

18   motion, your Honor.  We certainly need extra time.  We've got

19   to get notice out to another 72 people.  We know we didn't get

20   good notice out to all 151 the first time around, and so we're

21   asking for some time this summer to work all that out.

22               **THE COURT:**  All right.

23               **MR. MUSKAT:**  Your Honor, their motion raises

24   substantial and very serious issues from our perspective.  You

25   know, we had planned to file a written response that set out

1    our factual and legal arguments in detail.  I believe the

2    response deadline would have been the 25th.  Frankly, your

3    Honor, we still have that opportunity.  There's a lot to

4    address in the motion and in the proposed notice and in the

5    mechanics that Mr. Braugh has described that they are

6    proposing.  Of course, you've asked us here to hear this anyway

7    and so I'm happy to summarize what our responses are, and I'll

8    go ahead and do that.

9              So we're agreeable to one proposed aspect of the

10   proposed expansion, and that is as to the 72 names.  This was

11   the proposal that we made back in February to expand the class

12   to these additional 72 names, which would cover everybody who

13   was a contractor in Tubular Services.  And we are -- well, I'll

14   address sort of the notice and mechanics and opt-in stuff down

15   the road.

16             But just in terms of class scope or expanded class

17   scope, we have no objection to expanding the class and sending

18   out notice to these additional 72 people.

19             Now, the proposed expanded class includes in addition

20   to -- well, it names not only the Tubular Services entity,

21   which we've been discussing, but also Allis-Chalmers Energy,

22   Inc. that this is supposed to go to current and former

23   employees who were classified as contractors or day-rate

24   employees by Allis-Chalmers Energy, Inc. and these other

25   entities.  And I just -- I need to state for the Court that

24

1    it's our position that that doesn't include anybody else but

2    the 222 people; that Allis-Chalmers Energy, Inc. is a holding

3    company; it is does not employ anyone; it is the parent company

4    over a big group of companies.

5         **THE COURT:**  Isn't that what they're wanting to do

6    some discovery on?

7         **MR. MUSKAT:**  Well, that is.  And so it's premature to

8    be leaping to the conclusion that their discovery is going to

9    show that it's appropriate to expand the class.  If they're --

10   if it is ultimately determined that the class -- through

11   discovery that the class should be expanded beyond Tubular

12   Services, then it might be appropriate at that time to expand

13   the class.  But we haven't gotten there yet.  It's our

14   contention that this doesn't add anybody.  This is just saying

15   Allis-Chalmers Energy, Inc. doesn't add anyone.  I wouldn't

16   know who to add, because it's our position that that entity

17   doesn't employ anybody.

18        The workers in this big group of companies are

19   employed by the different operating companies.  And it is

20   certainly, we contend, not appropriate to certify a class as to

21   workers in these other operating companies when the Plaintiffs

22   didn't work for them and there's been no demonstration that

23   this is all some integrated enterprise and there's been no

24   factual allegations of any unlawful pay practices in those

25   other entities.  And so we would -- that's how we interpret

1    this.  And to the extent it's to be interpreted any

2    differently, we would object.

3             We would further object to adding day-rate employees

4    to this group, because one of the named Plaintiffs are day-rate

5    employees.  They were contractors who alleged to have been

6    misclassified.  None of them were paid or alleged to have been

7    paid on a day-rate basis.  There's been no showing at all of

8    any common policy or practice where any of the named Plaintiffs

9    have any standing whatsoever to bring claims on behalf of day-

10   rate employees.  So we would object to an inclusion of day-rate

11   employees in the class.

12            We would further object to the aspect of this class

13   definition.  Really, it's the last five lines of the class

14   definition, which talks about how these are folks who were not

15   paid overtime compensation for time worked in excess of

16   40 hours per work week and/or who were not paid for all hours

17   worked and/or who were not paid at the federal minimum wage of

18   $7.25 for all hours worked.  That assumes the conclusions that

19   the Plaintiffs are trying to prove, and we think it's not

20   appropriate to be in the class definition.  What we should be

21   doing is objectively identifying the people who should receive

22   this according to their companies or their job titles as

23   opposed to including leaping to the conclusion that these are

24   valid claims.

25            For example, if somebody worked off the clock that

1   can be a violation of the overtime aspects of the FLSA if that

2   off-the-clock work was in excess of 40 hours per week.  That

3   can also be a violation of, in theory, of the minimum wage

4   aspects of the FLSA if the off-the-clock work essentially

5   forced the regular rate below the minimum wage.  But if neither

6   of those two things happens, the FLSA doesn't provide a remedy

7   for off-the-clock work.

8        And so, you know, we contest sort of the legal merits

9   of the notion that somebody who wasn't paid for all hours

10  worked if that didn't affect minimum wage or if that didn't

11  affect overtime, you know, that they would even have a valid

12  claim there.  So we object to that aspect of the definition.

13        THE COURT:  But the claim is different than just

14  getting notice out and then we'll figure out who may have a

15  claim or not.

16        MR. MUSKAT:  Correct, your Honor.  But my point is

17  just simply that, you know, in addressing this to people it

18  just doesn't seem fair to us to address it to them and

19  basically say, you know, you're getting this because you were a

20  victim of this unlawful practice.

21        THE COURT:  No, if you were then you can --

22        MR. MUSKAT:  Yes.  Okay.  So those are our issues

23  with the class scope.  Yes.  And so let me address sort of some

24  of the other mechanics, the opt-in period.

25        So we're okay with expanding this class to the

1    additional 72 people within Tubular Services.  We don't agree

2    that it's appropriate to extend the opt-in period for those --

3    or to have an opt-in period for this all the way into August.

4    I think the first time around when you certified the first

5    class you gave a roundabout 60 days or so for an opt-in period.

6    And it seems to us that that's the appropriate opt-in period

7    for these folks is about 60 days or so.

8              We object to the notion of extending the opt-in

9    period for the people who've already received notice.  I mean

10   these people have now had almost 60 days to opt in.

11   Plaintiffs' counsel did not ask for a notice in Spanish to be

12   sent out originally.  It appears as if they've had substantial

13   contact with these people, with the class members.  There's

14   been a lot of communications about this case.  We have a large

15   number of people that opted in.  So we don't think it's fair to

16   extend the opt-in period even further.  Sixty days were picked

17   originally for a reason because that's what courts typically

18   say is an appropriate amount of time.  And so, you know, we

19   don't think that there's any basis to extend it even further

20   for the people who have already the notice.

21             We don't object for the notice that goes out to these

22   additional 72 folks, we don't object to that being in Spanish

23   although we would like, you know, to see a copy of that.  I

24   mean we would like to have an opportunity to assure that it is

25   accurate.  But we don't have an objection to principle to that.

1          In terms of -- we have no objection just like you did

2    the first time around to posting the notice on company bulletin

3    boards.  But what I'm not clear about is if we are suggest-- if

4    Plaintiffs' counsel is suggesting posting this notice on the

5    bulletin boards of other operating companies within this group

6    of companies, like in Pennsylvania or wherever, that doesn't

7    seem to us to be appropriate.  We don't think that those people

8    ought to be included in the class, and we don't think that

9    there are any Tubular Services' employees who would benefit

10   from that.  I mean we would already -- we've already done what

11   we would agree to do here, is to have the notice posted in the

12   Tubular Services' offices.

13          Your Honor, I have read the proposed notice.  I have

14   not gone -- I mean I was going to before the 25th, but I have

15   not gone through it in detail sort of with an eye toward

16   redlining it to see if there's any sort of misleading or

17   prejudicial or non-mutual statements in here.  I'd like the

18   opportunity to do that if, you know, to make sure that we're

19   okay with the language in the notice.  Kind of like we did the

20   first time around when the Plaintiffs filed a proposed notice

21   and we redlined it and then the Court made its decision and

22   issued something somewhere in between.  So we have not done

23   that.  We would like to do that.  That's it.

24          **MR. BRAUGH:**  If I may, your Honor?

25          **THE COURT:**  Yeah.

1          **MR. BRAUGH:**  With respect to the scope of the notice,

2    you will note in our brief that we had discussed the concept of

3    enterprise as it is understood under the FLSA, which really

4    forms the basis for what an employer is.

5          I don't hear arguments from Allis-Chalmers in terms

6    of the FLSA's definition of who employer is.  They keep on

7    saying well one is -- this is an operating subsidiary, so

8    clearly you can't send out a notice to an operating subsidiary.

9    But that's not what the FLSA says.  The FLSA says that this

10   enterprise is the employer.  And that may include related

11   companies by the claim definition of this.

12         It is clear to me from the arguments being made so

13   far by Allis-Chalmers, and it's a good tactic, that they want

14   to compartmentalize their business and make us find an employee

15   for every one of their 27 subsidiaries before they actually

16   have to pay up under the FLSA for the employees they have been

17   underpaying for many years now.

18         A few months has burned off the clock of 71 or 72

19   employees that Allis-Chalmers knew at the last hearing should

20   have been part of this class and should have received notice.

21   And so we believe that there is a concerted effort to delay the

22   identification of employees so that they will lose their

23   statute of limitations.  And by the time we finally slog

24   through discovery and find them their clock will be burned up

25   and the case will be as Mr. Muskat described early on this

1   case, of literal no value, small claims, it's really not worth

2   their time litigating because these are such small claims for

3   people that aren't going to get much money.

4          But I can assure the Court that to these people the

5   money they were due and are due today is very significant to

6   them.  And that's especially true for people who we haven't

7   been able to identify yet because we can't get discovery.

8          And so I think under the current record that you have

9   before you, what you have is some evidence we have presented

10  suggesting that Allis-Chalmers Energy, Inc. is part of an

11  enterprise that is imposing this illegal pay scheme on all of

12  these employees, many of whom we don't know about.

13         We sent discovery to try to get at that, and it's

14  part of the motion to compel that was filed yesterday.  And we

15  got zero answers.  So as we sit here before you on the second

16  hearing regarding certification, the first hearing they

17  wouldn't -- they would identify and concede there may be other

18  people but wouldn't stipulate to them.  Now we're saying all

19  those are all separate operating subsidiaries, you can't touch

20  us; and at the same breath and at the same time they are

21  refusing to answer discovery about it.  So we will be back here

22  again further delayed, further time off the statute of

23  limitations if we don't go ahead and certify this class.

24         If Allis-Chalmers Energy, Inc. has told this Court

25  the truth they don't have a single employee, they're merely an

1   operating company, then guess how many people will be on the

2   list of affected employees?  Zero.

3            If they are tested and they are put on this order, we

4   are going to find out very quickly if that's true.  We may get

5   a list of a thousand employees or they may stick with it and

6   say, no, it's zero.  If it's zero and what they're saying is

7   true, there is absolutely no harm in including them in this

8   class.

9            **THE COURT:**  Okay.

10           **MR. MUSKAT:**  Your Honor, the problem about -- let me

11  pick up his last point -- is it's not clear to us what they're

12  suggesting -- who they are suggesting be included in this

13  class.  If they are suggesting that every single contractor

14  that was employed by any operating company within this group of

15  companies would be included within the scope, that's okay.

16  Well, then we have a substantial disagreement with them on

17  that.  Because in order to get conditional certification of a

18  class, it's their burden to show a common policy or practice

19  that extended throughout that entire class.  And they've had

20  three people who are named Plaintiffs step forward and provide

21  proof of a practice that occurred within the Tubular Services

22  entity.  And what they would improperly be doing by

23  conditionally certifying a class in the absence of any evidence

24  or even allegation of class-wide unlawful practices is skirting

25  the entire conditional certification process, truly putting the

1   cart before the horse.

2          So if what they are suggesting is that that's who

3   should get the notice is everyone in every operating company

4   who is considered a contractor or a day-rate employee, we

5   thinks that's improper.

6          My point about Allis-Chalmers Energy, Inc. is just

7   that it is a holding company that doesn't employ anyone.  Now,

8   they seem to be contesting that.  They seem to be suggesting

9   that as a matter of integrated enterprise principles or joint

10  employment principles, what I think they're suggesting is that,

11  no, that's not true; Allis-Chalmers Energy, Inc. actually is

12  the employer of everybody in every operating company in this

13  entire group of companies.

14         And if that's what they're saying is true, then

15  that's -- you've ordered discovery on that and I guess we will

16  do discovery on that and litigate that.  But it would put the

17  cart before the horse to send out notice to everybody on the

18  assumption that what they say is true about this enterprise.

19  And so that's -- just to be clear, that's our issue in terms of

20  the class scope.

21         I just have to correct for the record a couple of

22  these comments that opposing counsel is making about positions

23  we've taken.  I think he just said that we -- you know, we

24  showed up at this scheduling conference in February knowing

25  that these 72 people should be included.  And that's not the

33

1    case your Honor.  We took the position that the class ought to

2    be limited to the South Texas District of Tubular Services and

3    these particular job titles.

4            My client made a business decision after that hearing

5    once it became clear that the other side intended to pursue

6    this further that it wasn't worth the litigation.  So I want

7    the record to be clear about that.  No one knew that these

8    additional -- and to this day the reason why we are willing to

9    include the 72 people is not because we think they are proper

10   class members but because we do not want to litigate that issue

11   any further.  Thank you, your Honor.

12           THE COURT:  Okay.

13           MR. BRAUGH:  I don't even want to go back and forth

14   too much, your Honor, but --

15           THE COURT:  It's your motion so you get the last

16   word.

17           MR. BRAUGH:  But there clearly is evidence that we

18   have supplied in the record and attached to our motion -- and

19   refer to our motion -- that Allis-Chalmers Energy, Inc. is the

20   employer.  What counsel for Allis-Chalmers is saying:  Well,

21   that's okay, we'll agree to do discovery on that now, even

22   though they just refused to answer discovery this week.  There

23   is evidence before the Court.  The only conflict in the

24   evidence is they have supplied this Court with one affidavit

25   that says Chalmers is merely -- Energy, Inc. is merely a

1   holding company.  We have supplied this Court with a

2   stipulation signed by them in federal court saying they do

3   employ people.

4         So the evidence before the Court supports expanding

5   the class to Allis-Chalmers Energy, Inc.  If they are truly not

6   employers under the definition established by the FLSA for the

7   enterprise, then they won't be identifying any employees.  They

8   can read the statute; they can comply or choose not to comply

9   with it.  But I think it's time to test them.

10        **THE COURT:**  Okay.  I'm going to take that motion

11  under advisement and probably get a ruling out early next week,

12  okay?

13        **MR. BRAUGH:**  Thank you, your Honor.

14        **THE COURT:**  Now, I know you all just filed the motion

15  yesterday?

16        **MR. BRAUGH:**  Yes, your Honor.

17        **THE COURT:**  Regarding the discovery, motion to compel

18  discovery responses?

19        **MR. MUSKAT:**  Yes.  And as I told Plaintiffs' counsel

20  yesterday, the objection we made to discovery were consistent

21  with almost everything we've been discussing in this hearing.

22        **THE COURT:**  Okay.

23        **MR. MUSKAT:**  We were hoping that the Court would side

24  with us on those issues and, therefore, you know, essentially

25  sustain many of the objections we made.  That hasn't happened,

1    and so we will re-evaluate our objections.

2            Now, we also -- I do want to make clear that not all

3    the objections we made were just mirror images of the more

4    global objections we made in this hearing.  And we made certain

5    individualized objections to these requests; I mean as being

6    overbroad or burdensome or whatnot, you know.  And the motion

7    that they filed just basically says -- I mean ignores that

8    level of detail and just basically says we'll respond to

9    everything.

10            But what I guess we would like to have the

11   opportunity to do is to now go back and given the rulings

12   you've made at this hearing, your Honor, have an opportunity to

13   answer subject to, you know, some or all of those objections.

14   But we need an opportunity to go back and review them.

15            **THE COURT:**  Okay.  How much time do you need?

16   Because I think that time had already lapsed for you to

17   respond, right?  So they filed a motion to compel.  How much

18   time do you need now based on the rulings of the Court to go

19   back and look at what you've answered and whether you're going

20   to change it or modify it or not?

21            **MR. MUSKAT:**  Well, I mean we don't need much time to

22   make those decisions.  What we need a little bit of time to do

23   is to produce documents that are responsive to the requests.

24            **THE COURT:**  How much time are you talking about?

25            **MR. MUSKAT:**  Two weeks.

1          **THE COURT:**  I was going to say seven days, give you

2   seven days to get it answered.  If not, they're going to bring

3   the motion to compel back to the Court, I'm assuming so --

4          **MR. MUSKAT:**  Yes, and I -- yes.  I guess if we

5   have -- you know, intractable, you know, disagreements about

6   certain of the objections I guess that is what would happen.

7   But we will make every effort, your Honor, as to the things

8   that where we're not standing on objections but we're going to

9   produce responsive documents, we will make every effort to do

10   that as quickly as possible.

11          **THE COURT:**  Okay.  So by Friday the 20th you'll file

12   responses?

13          **MR. MUSKAT:**  Yes.

14          **THE COURT:**  To the discovery and then --

15          **MR. MUSKAT:**  Yes.

16          **THE COURT:**  -- if there continue to be issues I guess

17   set a hearing with the Court?

18          **MR. BRAUGH:**  We will.

19          **THE COURT:**  You all need to fully confer before you

20   do that after they have filed -- if they stand on their

21   objections or not or wherever you may be, if you all will, you

22   know, confer about that before you bring it to the Court, I'd

23   appreciate that.

24          Is there anything else pending?

25          **MR. BRAUGH:**  There's nothing else pending.  I think

37

1   just for the record, you know, we know that there is a

2   mechanism for seeking equitable tolling limitations period for

3   class members.  We would just remark for the record that based

4   upon what happened in the first hearing and what is transpiring

5   now with respect to discovery it is likely that we will need to

6   file that response or request that relief based upon the pace

7   at which discovery has been forthcoming.

8           **THE COURT:**  Okay.  Anything else?

9           **MR. BRAUGH:**  No, your Honor.

10          **THE COURT:**  Then you can be excused.

11      **(This proceeding was adjourned at 3:22 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    April 17, 2012

            Signed                                      Dated



                    *TONI HUDSON, TRANSCRIBER*