IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOSE ANGEL LOPEZ AND MICHAEL   §
JAMES LYONS, Individually and on   §
behalf of all others similarly situated,   §
  §
     Plaintiffs,   §
  §
v.   §     CIVIL ACTION NO. 2:11-CV-00353
  §
ALLIS-CHALMERS ENERGY INC.,   §
ALLIS-CHALMERS TUBULAR   §
SERVICES LLC F/K/A ALLIS-   §
CHALMERS TUBULAR SERVICES,   §
INC., AND ARCHER TUBULAR   §
SERVICES LLC,   §
  §
     Defendants.   §

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION TO STRIKE RULE 68 OFFERS</u>**

MICHAEL J. MUSKAT
Attorney-in-Charge
State Bar No. 24002668
S.D. Tex. Bar No. 22816
MUSKAT, MARTINEZ & MAHONY, LLP
1201 Louisiana Street, Suite 850
Houston, Texas 77002
Telephone:  713-987-7850
Telecopier:  713-987-7854

Attorneys for Defendants

OF COUNSEL:

GABRIELLE S. MOSES
State Bar No. 24063878
ALLISON R. MAY
State Bar No. 24059281
1201 Louisiana Street, Suite 850
Houston, Texas 77002
Telephone:  713-987-7850
Telecopier:  713-987-7854

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 5

I.     There is No Basis on Which to "Strike" Defendants' Outstanding Rule 68 Offers, Extend the Response Deadline, or to Issue a "Curative Notice" to Anyone. ..................... 5

     A.     The timing and content of Defendants' Rule 68 offers are completely consistent with the purpose of Rule 68, which is to encourage parties to resolve litigation promptly and without incurring unnecessary attorneys' fees. ..................... 5

II.     Named Plaintiffs' Claim that They Cannot Respond to the Offers Without Requested Discovery Not Only Fails to Present a Basis for  Modifying the Offers, But It Is Completely Unsupported by the Record, As the Requested Discovery Goes to Merits and Whether the Class Can Be Expanded, and not the Amount of Backpay That Any Individual Class Member May Be Owed. ......................................................................... 12

III.     Ordering an Extension of the Response Deadline on Defendants' Rule 68 Offers Is Not Only Unauthorized by Rule 68, But It Defeats the Purpose of the Rule, Which is To Prompt Plaintiffs to Evaluate Their Claims Before Potentially Expensive, Burdensome, or Unnecessary Discovery is Conducted. ................................................. 15

IV.     Because Defendants Are Lawfully Permitted to Send Rule 68 Offers Directly to Class Members Who Have Declined to Be Represented by Sico, White or Any Other Counsel, Defendants Respectfully Request that the Court Reconsider Its Orders Striking the Rule 68 Offers to Unrepresented Class Members and Barring Defendants from Contacting Such Class Members. ........................................................ 16

     A.     The Court's approved Class Notice and Consent forms expressly allowed class members to choose *not* to be represented by Sico, White, and nine class members made that choice. ................................................................................. 16

     B.     Striking the Rule 68 offers to unrepresented class members not only impedes Defendants' right to deal with unrepresented class members directly, but it deprives those class members of the opportunity to consider Defendants' offers. ................................................................................................................. 20

V.     Named Plaintiffs Should Be Ordered to Identify and Provide Evidentiary Support as to All Class Members Represented by Sico, White Now and in the Future, and Sico, White Should Be Ordered to Enter an Appearance on Behalf of Such Persons to the Extent They Have Not Already Done So. ........................................................................ 21

VI.     There is No Basis for Imposing Monetary or Other Sanctions Against Defendants, Because They Clearly Did Not Act in Bad Faith. .............................................................. 22

VII.     Discovery Requests Sent to the Nine Unrepresented Class Members Are Withdrawn Pursuant to the Court's June 21, 2012 Letter to These Class Members. .......................... 23

Conclusion and Prayer for Relief ...................................................................................... 24

i

## TABLE OF AUTHORITIES

**Cases**

*Ambalu v. Rosenblatt*,
194 F.R.D. 451 (E.D.N.Y. 2000) .................................................................... 10, 11

*Banks v. Robinson*,
2011 U.S. Dist. LEXIS 135622 (D. Nev. Nov. 22, 2011) ...................................... 10

*Bechtol v. Marsh & McLennan Cos.*,
2008 U.S. Dist. LEXIS 107849 (W.D. Wash. May 13, 2008).................................. 12

*Belt v. Emcare Inc.*,
299 F. Supp. 2d 664 (E.D. Tex. 2003)............................................................. 19, 20

*Bogner v. Masari Investments, LLC*,
2009 U.S. Dist. LEXIS 45311 (D. Ariz. May 19, 2009) ...................................... 12

*Darboe v. Goodwill Indus. of Greater N.Y. & N. N.J., Inc.*,
485 F. Supp. 2d 221 (E.D.N.Y. 2007) ................................................................ 11

*Delta Airlines, Inc. v. August*,
450 U.S. 346 (1981).......................................................................................... 5

*Elliott v. Tilton*,
64 F.3d 213 (5th Cir. 1995) ................................................................................ 22

*Flick v. Am. Fin. Res., Inc.*,
2012 U.S. Dist. LEXIS 51 (E.D.N.Y. Jan. 3, 2012) ............................................ 10

*Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*,
258 F. Supp. 2d 157 (E.D.N.Y. 2003) ................................................................ 11

*Grissom v. Mills Corp.*,
549 F.3d 313 (4th Cir. 2008) ...................................................................... 10, 11

*Guerrero v. Hudson & Keyse, LLC*,
2009 U.S. Dist. LEXIS 4921 (W.D. Tex. Jan 20, 2009) .................................... 10, 11

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)............................................................................................ 19

*Johnson v. Spiegel, Inc.*,
2002 U.S. Dist. LEXIS 15263 (N.D. Ill. Aug. 15, 2002) ...................................... 9

*Marek v. Chesny*,
473 U.S. 1 (1985).................................................................................... 5, 6, 9

*Mendoza v. Regis Corp.*,
2006 U.S. Dist. LEXIS 48893 (W.D. Tex. July 6, 2006) ...................................... 9

*O'Brien v. Ed Donnelly Enterps., Inc.*,
575 F.3d 567 (6th Cir. 2009) .............................................................................. 10

*Sandoz v. Cingular Wireless, LLC*,
553 F.3d 913 (5th Cir. 2008) ............................................................................... 8

*Simmons v. United Mortg. and Loan Inv., LLC*,
  634 F.3d 754 (4th Cir. 2011) ................................................................ 10

*Symczyk v. Genesis Healthcare Corp.*,
  656 F.3d 189 (3d Cir. 2011), *cert granted, Genesis Healthcare Corp. v. Symczyk*,
  2012 U.S. LEXIS 4744 (U.S. June 25, 2012) .......................................... 8

*Tillman v. Calvary Portfolio Servs., LLC*,
  2009 U.S. Dist. LEXIS 18467 (D. Ariz. Feb. 27, 2009)........................... 12

*Williams v. McCallum Group Enters., Inc.*,
  2008 U.S. Dist. LEXIS 4849 (M.D. Fla. Jan. 23, 2008)........................... 11

*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981) ................................................................ 8

**Statutes**

29 U.S.C. § 216(b) ...................................................................................... 11

**Other Authorities**

12 Wright, Miller & Marcus, Federal Practice & Procedure:
  Civil 2d § 3001, p. 66 (1997) ................................................................... 5

12 Wright, Miller & Marcus, Federal Practice & Procedure:
  Civil 2d § 3002, p. 93 (1997) ................................................................. 11

12 Wright, Miller & Marcus, Federal Practice & Procedure:
  Civil 2d § 3005.1, p. 111......................................................................... 11

13 Moore's Federal Practice Civil § 68.02 ................................................... 5

**Rules**

Fed. R. Civ. P. 68(a) ........................................................................... Passim

## <u>INTRODUCTION</u>

Federal Rule 68 exists to promote settlement and avoid unnecessary litigation.  The Rule allows defendants to make offers of judgment to plaintiffs if the offers are made at least 14 days before trial, and it gives plaintiffs 14 days in which to accept or decline the offers.  To encourage Rule 68 offerees to – in the words of the U.S. Supreme Court – "think very hard" about whether continued litigation would likely result in an award more favorable than what is being offered, the Rule contains a cost-shifting mechanism that obligates a rejecting offeree to pay the defendant's costs if the judgment ultimately obtained is *less* than the amount of the Rule 68 offer.

To prompt opt-in class members and their counsel (where applicable) to "think hard" about the present value of their claims and whether continued litigation is likely to actually increase that value, Defendants served Rule 68 offers of judgment to 49 class members who had opted into this case prior to this Court's original April 17, 2012 opt-in deadline.  These offers complied with Rule 68 in form and in timing.  The offer amounts were based on Defendants' review and analysis of the opt-in class members' time and pay records.  Those same records were produced to the Named Plaintiffs' counsel weeks before the offers were made.

Named Plaintiffs and their counsel ("Sico, White") have challenged the Rule 68 offers on numerous grounds.  Those challenges are replete with factual misrepresentations, inapplicable legal authority, and, in many cases, no legal authority at all.   Indeed, the challenges seem less like good-faith legal arguments and more like a broad-scale attack on Rule 68 itself.  Most significantly:

    \*      Named Plaintiffs challenge the offers' 14-day acceptance period, but the 14-day period is established by Rule 68 itself.

1

\*      Named Plaintiffs challenge the fact that the offers limit attorney's fees and costs to those incurred through the date of the offer, but again, Rule 68 expressly provides that an offer of judgment should include "costs then accrued."

\*      Named Plaintiffs challenge the fact that the offers of judgment leave attorney's fees and costs to be decided by the Court (subject to appeal), but there is a substantial body of authority (conspicuously absent from Named Plaintiffs' briefing) making clear that this is appropriate and consistent with Rule 68.

\*      Named Plaintiffs suggest that because the opt-in period remains open for other putative class members, the offers somehow improperly discourage those class members' participation in the case and should be stricken as a result.  Named Plaintiffs cite plainly inapplicable legal authority in support and there is absolutely nothing that is coercive or misleading in the offers.  Moreover, as a factual matter, even if putative class members were aware that offers had been made to opt-in plaintiffs, it would seem that the putative class members would likely have a *greater* incentive to join the case if they think that they, too, might be the recipient of a prompt settlement offer.

\*      Named Plaintiffs complain that the offers should be stricken or delayed because they want to conduct discovery, but the very purpose of Rule 68 is to avoid unnecessary discovery and litigation, and thus the Rule allows offers at any time as long as they are made at least 14 days before the trial date.  Moreover, Named Plaintiffs' argument regarding discovery ignores the plain text of Rule 68 (which contains no limitation on serving Rule 68 offers in cases where discovery may be ongoing), is completely unsupported by legal authority, and obscures the fact that the value of class members' claims is determined by simple formulas involving pay rate and the number of overtime hours worked, and so the only issues that a class member must

consider in evaluating the Rule 68 offer are pay rate and how many overtime hours he worked within the applicable time period, both of which are set forth in the time and pay documents that class members were timely provided.

Named Plaintiffs also challenge Defendants' service of Rule 68 offers directly on unrepresented class members, and the Court has nullified those offers and restrained Defendants from communicating with unrepresented class members.   Because Defendants' contact with unrepresented class members was lawful and appropriate, Defendants must respectfully request that the Court reconsider and rescind these orders.

Specifically, and as discussed in detail in the Argument below, this Court's approved Class Notice and Consent forms gave class members the right to decline to be represented by Named Plaintiffs' counsel, and the forms at least implicitly allowed class members to proceed without counsel if they so chose.  The operative language in both sets of forms was originally proposed by the Named Plaintiffs themselves.  The objective evidence showed that nine opt-in class members chose to proceed without counsel, and to the extent that two of those class members subsequently changed their minds and retained Named Plaintiffs' counsel, those decisions were not communicated to Defendants through a notice of appearance or otherwise – even though Named Plaintiffs' counsel *did* enter an appearance on behalf of 23 other previously unrepresented opt-in class members just after the original opt-in period closed.  Defendants will of course communicate with represented class members through their counsel – and they respectfully request that Named Plaintiffs' counsel be ordered to identify these class members so that there is no further confusion – but there is no basis to restrict Defendants' contact with unrepresented opt-in class members, and certainly no basis to impose sanctions for conduct that was taken in good faith and was reasonable given the evidence.

3

Through this Opposition, therefore, Defendants respectfully request the following relief:

1.      That the Court DENY Plaintiffs' request to "strike" the Rule 68 offers sent to the class members represented by Sico, White or otherwise modify the offers' terms in any way;

2.      That the Court RECONSIDER and RESCIND its June 21, 2012 order extending the response deadline by 60 days as to the outstanding Rule 68 offers, and that the Court ORDER that the class members represented by Sico, White have 14 days from the date that they received the offer in which to respond (as stated in the offers themselves);

3.      That the Court (a) RECONSIDER and RESCIND its June 21, 2012 order holding the offers to the unrepresented class members to be null and void, (b) authorize Defendants to re-serve those offers directly on all such class members who are unrepresented, and (c) to the extent that Sico, White has claimed to represent any of them, to send the re-served offers to Sico, White rather than on the class members directly;

4.       That the Court RECONSIDER and RESCIND its June 21, 2012 order barring Defendants from having direct contact with unrepresented class members for any purpose, and that the Court send all unrepresented class members a follow-up letter stating that (a) Defendants will re-serve their Rule 68 offers, and (b) that Defendants' counsel may contact the class members directly to the extent they are unrepresented by counsel;

5.      That the Court ORDER Sico, White to immediately (a) identify and provide evidentiary support as to all class members represented by their firm now and in the future, and (b) enter an appearance on behalf of all such persons to the extent they have not already done so; and

6.      DENY Named Plaintiffs' request for sanctions, monetary or otherwise.

We support these requests with our arguments below.

4

## ARGUMENT

I.  **THERE IS NO BASIS ON WHICH TO "STRIKE" DEFENDANTS' OUTSTANDING RULE 68 OFFERS, EXTEND THE RESPONSE DEADLINE, OR TO ISSUE A "CURATIVE NOTICE" TO ANYONE.**

A.  **The timing and content of Defendants' Rule 68 offers are completely consistent with the purpose of Rule 68, which is to encourage parties to resolve litigation promptly and without incurring unnecessary attorneys' fees.**

Rule 68 was specifically designed to minimize unnecessary litigation and attorneys' fees by shifting risk.   As described in Moore's Federal Practice, Rule 68's primary purpose is

> to promote settlements and avoid protracted litigation.   Although both parties always have an incentive to settle in advance of trial due to adverse consequences of potential defeat, Rule 68(d) provides an additional inducement when there is a strong likelihood "that the plaintiff will obtain a judgment but the amount of recovery is uncertain."  The making of a Rule 68 offer shifts to the claimant some of the risk of proceeding with a lawsuit, given the possibility of having to pay post-offer costs.   The offer of judgment rule "prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."

13 Moore's Federal Practice Civil § 68.02 (quoting *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 & n.8 (1981); *Marek v. Chesny*, 473 U.S. 1, 5 (1985) (superseded by statute on other grounds)); *see also* 12 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 3001, p. 66 (1997) ("Rule 68 was intended to encourage settlements and avoid protracted litigation.").

Rule 68 offers can be of substantial value to plaintiffs because the offers may well exceed what the plaintiff reasonably expects to obtain at trial.   Thus, as the U.S. Supreme Court has forcefully explained, the rule is neutral and benefits plaintiffs just as much as it benefits defendants:

> Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits. Civil rights plaintiffs – along with other plaintiffs – who reject an offer more favorable than what is thereafter recovered at trial will not recover attorneys' fees for services performed after the offer is rejected.   But, since the Rule is neutral, many civil rights plaintiffs will benefit from the offers of settlement encouraged

> by Rule 68.  Some plaintiffs will receive compensation in settlement where, on trial, they might not have recovered, or would have recovered less than what was offered.  And, even for those who would prevail at trial, settlement will provide them with compensation at an earlier date without the burdens, stress, and time of litigation.  In short, settlements rather than litigation will serve the interests of plaintiffs as well as defendants.

*Marek*, 473 U.S. at 10.

By its very nature and given its cost-shifting mechanism, Rule 68 contemplates offers that are made before litigation is complete.   As the Court has stated, the cost-shifting aspect of the Rule is supposed to compel plaintiffs to "think very hard" about their claims in the interest of resolving disputes and discouraging unnecessary litigation:  "To be sure, application of Rule 68 will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates."  *Marek*, 473 U.S. at 11.

Rule 68 itself sets out a process that must be followed with respect to offers of judgment,[1] and leaves the courts no discretion to modify that process.  First, Rule 68 establishes a wide time frame for the making of offers, namely, that the offer must merely be made "[a]t least 14 days before the date set for trial."  Fed. R. Civ. P. 68(a).  The offer must allow a judgment in the plaintiff's favor and must set out "specified terms, with the costs then accrued."  *Id.*   If the offer is accepted within 14 days of being served, it may be filed with the Court and the Clerk "must then enter judgment."  *Id.*   As to unaccepted offers, the rule shifts risk:  If "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  *Id.* at 68(d).  If, on the other hand, the judgment

---

[1]     As the rule makes clear, a Rule 68 offer is an offer to allow the plaintiff to take a judgment in his favor, not an offer to compromise a claim in exchange for a release.  Thus, the *Lynn's Food Stores* line of cases relied on by Named Plaintiffs on page 11 of their Motion – which generally hold that either a court or the Department of Labor must approve a plaintiff's *release* of FLSA claims – is inapposite.

obtained is more than what was offered, then the plaintiff's rejection of the offer is of no consequence.

Defendants' Rule 68 offers tracked the statutory requirements precisely. First, each offer stated that it was an offer "to allow judgment in your favor and against Defendants." (Attachment A and B to Muskat Decl.) Then each offer specified the amount of money being offered for backpay and liquidated damages as to that particular class member, and addressed the payment of costs by stating that the offer included "attorneys' fees and costs through the date this offer is served on you as determined by the Court, and subject to appeal by either you or Defendants to the U.S. Fifth Circuit Court of Appeals." (*Id.*) Each offer gave the class member 14 days in which to accept or reject the offer, and included an acceptance form and self-addressed stamped envelope. (*Id.*) The cover letter accompanying each offer stated, as is stated in Rule 68(d), that if the class member rejected the offer and the judgment obtained is not more favorable than the offer, the class member must pay the costs incurred by Defendants after the offer was made. (*Id.*) Defendants enclosed a copy of Rule 68 with each offer. (*Id.*) In the offers that went to unrepresented class members, Defendants further enclosed a Spanish version of the offer, cover letter, and Rule 68 itself.[2] (*Id.*)

Named Plaintiffs attack the Rule 68 offers with a variety of arguments. As explained below, not only are none of these arguments supported with any applicable legal authority, each of them is firmly undermined by existing precedent.

First, Named Plaintiffs attempt to characterize the offers generally as improper "communications" with class members. (Motion at 3-4) In support, Named Plaintiffs cite

---

[2]     As all nine unrepresented class members received Spanish-language versions of the Rule 68 offer and the accompanying cover letter, it is perplexing that Named Plaintiffs claim in footnotes 12 and 15 of their Motion that one of those nine class members, Ronald Despaigne, allegedly had to contact a friend to translate the documents into Spanish for him.

several cases which they say "reject[] FLSA defendants' attempts to pick-off plaintiffs through settlement to moot FLSA collective actions."   (Motion at 3-4, citing *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 920 (5th Cir. 2008); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1036 (5th Cir. 1981)).   But these cases are plainly distinguishable, because they involved *pre-certification* Rule 68 offers to named plaintiffs that were made in an attempt to "pick off" the named plaintiffs and thereby moot the case prior to the filing of a conditional class certification motion.   No such concerns are present in this case, where the Rule 68 offers were made *after* certification, and are not being used as the basis to foreclose a collective action.[3] Here, instead, Defendants are simply attempting to resolve individual class members' claims without the expensive (and unnecessary) merits discovery and class-scope discovery that Named Plaintiffs seek to do, none of which, as explained below in Section II, will in any way shed light on the question raised by the Rule 68 offers:  namely, the amount of backpay owed to *these* opt-in class members.[4]

Named Plaintiffs also argue, without any legal support, that the offers' language regarding the payment of costs threatens "economic sanctions" and makes the offers improperly "coercive." (Motion at 8-9)  This argument is completely unsupported by the Rule 68 text.  The

---

[3]    Although this case does not involve pre-certification Rule 68 offers to the named plaintiffs, we nonetheless note that on June 25, 2012, the U.S. Supreme Court granted certiorari in a case decided by the Third Circuit that involves the question addressed by the Fifth Circuit in the *Sandoz* case:  namely, whether a putative FLSA collective action case becomes moot when the named plaintiff receives an offer satisfying all of his claims.  *See Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189 (3d Cir. 2011), *cert granted, Genesis Healthcare Corp. v. Symczyk*, 2012 U.S. LEXIS 4744 (U.S. June 25, 2012).

[4]    When discussing *Sandoz*, Named Plaintiffs further assert that Defendants' Rule 68 offers were made "before the opt-in deadline." (Motion at 4)  To be sure, there is nothing prohibiting Defendants from making a Rule 68 offer to an opt-in class member before the opt-in deadline has expired.  In any event, and so that the record is clear, we note that the only Rule 68 offers that have been made went to the class members who opted in to the case on or before the April 17, 2012 deadline set out in the Court's February 8, 2012 certification order.

offers' cited language simply tracked Rule 68(d)'s cost-shifting language, and, indeed, this is critical information about Rule 68 that class members evaluating the offers would very likely want to know. For that reason, courts have rejected the notion that an offer that simply repeats Rule 68's own cost-shifting language is somehow improper or coercive. *See Johnson v. Spiegel, Inc.*, 2002 U.S. Dist. LEXIS 15263, at *15-16 (N.D. Ill. Aug. 15, 2002) (rejecting argument that a Rule 68 offer was "threatening" because it "simply quoted the language of the rule" regarding the potential payment of costs); *Mendoza v. Regis Corp.*, 2006 U.S. Dist. LEXIS 48893, at *7-8 (W.D. Tex. July 6, 2006) (finding that an offer was *not* a proper Rule 68 offer in part because it *failed* to reference Rule 68's cost-shifting provision). *See also Marek,* 473 U.S. at 11 (observing that Rule 68's cost-shifting provision is intended to prompt a plaintiff to "think very hard" about a Rule 68 offer).

Named Plaintiffs further assert that the Rule 68 offers are improperly "conditional" and do not "offer complete relief" because the offers (a) limit fees and costs through the date that the offer is served; and (b) leave the amount of costs and attorneys' fees open for the courts to resolve. (Motion at 10) These arguments are, again, patently incorrect and are not a basis for invalidating the offers.

First, there is nothing "conditional" about leaving the costs and attorneys' fees open for court determination—the offers make clear that Defendants will pay the class member whatever costs and attorneys' fees that the courts award, no strings attached.

Second, the fact that fees and costs are limited to those incurred through the date the offer is served tracks the language of Rule 68(a) itself, which states: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued.*" Fed. R. Civ. P. 68(a) (emphasis

added).  *See Banks v. Robinson*, 2011 U.S. Dist. LEXIS 135622, at *6-7 (D. Nev. Nov. 22, 2011)
(dismissing FLSA claim as moot and for lack of subject-matter jurisdiction where offer included
"costs and attorney's fees accrued through September 1, 2011 (the date of the offer), to be
determined by the Court"); *Guerrero v. Hudson & Keyse, LLC*, 2009 U.S. Dist. LEXIS 4921, at
*5-15 (W.D. Tex. Jan 20, 2009) (rejecting attempt to claim fees incurred after the making of the
Rule 68 offer where the offer did not so provide) (citing *Grissom v. Mills Corp.*, 549 F.3d 313,
319-20 (4th Cir. 2008)); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452-53 (E.D.N.Y. 2000)
(validating offer of judgment which included "reasonable attorney's fee incurred up through the
date of the offer as determined by the court").

Third, to the extent that Named Plaintiffs mean to suggest that allowing the Court to
determine attorneys' fees is a basis for invalidating the offers, they (again) do not cite a single
case in support, and they fail to alert the Court to the substantial precedent holding to the
contrary.  *See Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 766 n.8 (4th Cir.
2011) ("We note that the absence of an amount certain with respect to the Plaintiffs' attorney's
fees in the May 16, 2008 letter does not, in any manner, contribute to our holding that such letter
offered the Plaintiffs less than full relief.  This is because, when as here, the defendants have
offered to pay the plaintiffs their reasonable attorney's fees as determined by the district court,
the plaintiffs have been offered full relief in regard to attorney's fees under the FLSA."); *O'Brien
v. Ed Donnelly Enterps., Inc.*, 575 F.3d 567, 575 (6th Cir. 2009) (validating Rule 68 offer to
[class plaintiff] which provided for a "reasonable attorney's fee" that would be determined by the
court); *Flick v. Am. Fin. Res., Inc.*, 2012 U.S. Dist. LEXIS 51, at *11 (E.D.N.Y. Jan. 3, 2012)
(confirming validity of Rule 68 offer of judgment that included "costs and reasonable attorneys
fees if applicable as determined by the Court"); *Banks,* 2011 U.S. Dist. LEXIS 135622, at *6-7

(offer included costs and attorney's fees to be determined by the Court"); *Guerrero*, 2009 U.S. Dist. LEXIS 4921, at *5-15 (deciding reasonable attorney's fees following a Rule 68 offer of judgment that included "reasonable attorney's fees and costs") (citing *Grissom,* 549 F.3d at 319-20); *Williams v. McCallum Group Enters., Inc.*, 2008 U.S. Dist. LEXIS 4849, at *3 (M.D. Fla. Jan. 23, 2008) (offer that included reasonable attorney's fees and costs was valid: "remaining issue regarding the amount of attorney's fee and costs is a collateral matter and does not involve the merits of the case") (citation and internal quotation marks omitted); *Darboe v. Goodwill Indus. of Greater N.Y. & N. N.J., Inc.*, 485 F. Supp. 2d 221, 222 (E.D.N.Y. 2007) (valid offer of judgment stated that reasonable attorney's fees and costs were to be determined by the court); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 258 F. Supp. 2d 157, 160-61 (E.D.N.Y. 2003) (recognizing as valid offer of judgment, which included "a reasonable attorney's fee"); *Ambalu*, 194 F.R.D. at 452-53 (validating offer of judgment which included "reasonable attorney's fee incurred up through the date of the offer as determined by the court"). *See also* 12 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 3002, p. 93 (1997) ("Alternatively, the defendant can specify the amount allowed for substantive relief and leave the determination of costs for later action by the court."); *id.* § 3005.1, p. 111 ("Defendant certainly can reserve the question of fee award for later disposition by the court.").[5]

---

[5]    Continuing their pattern of making legal arguments without any legal support, Named Plaintiffs further make the confusing claim that "the law is not settled" as to whether "merely paying half-time as liquidated damages is the proper method of calculating liquidated damages if Defendants are only found liable for payment of straight time."  (Motion at 11)  Even assuming that Plaintiffs were correct that the offers did not properly calculate liquidated damages (and they plainly are not correct, *see* 29 U.S.C. § 216(b)), that would not be a basis for striking or modifying the offers.  Instead, it might be a reason for an offeree to decline an offer on the ground that the offeree believed he would ultimately obtain more money in judgment than had been offered.  Nor does Rule 68 require that the offer include calculations in support of the offer amount, although we note that Defendants have been and remain more than willing to explain to Named Plaintiffs' counsel how the offer amounts were determined.

Finally, we note that even though Named Plaintiffs present no legitimate argument that the Rule 68 offers are deficient, their request to strike the offers fails on a fundamental level because an offer is not a pleading that can or should be stricken.   Indeed, an offer requires no court action unless and until it is declined, judgment is entered, and the defendant then uses the declined offer as a basis to seek costs under Rule 68(d).  *See, e.g.*, *Bechtol v. Marsh & McLennan Cos.*, 2008 U.S. Dist. LEXIS 107849, at *4-5 (W.D. Wash. May 13, 2008) (until defendant files the offer with the court in an attempt to seek costs, "there is nothing to strike") (internal citations and quotations omitted); *Tillman v. Calvary Portfolio Servs., LLC*, 2009 U.S. Dist. LEXIS 18467, at *3-6 (D. Ariz. Feb. 27, 2009) (denying plaintiff's motion to strike an unfiled Rule 68 offer because the motion essentially sought an impermissible advisory opinion); *Bogner v. Masari Inv., LLC*, 2009 U.S. Dist. LEXIS 45311, *2-4 (D. Ariz. May 19, 2009) (denying class plaintiffs' motion to strike an unfiled Rule 68 offer and noting that because the offer had been made to the class as a whole, it was not an attempt to "pick off" putative class members).

In sum, Defendants' offers were procedurally appropriate and complied with Rule 68 in every respect.  There is no basis on which to strike or modify the offers.

II. **NAMED PLAINTIFFS' CLAIM THAT THEY CANNOT RESPOND TO THE OFFERS WITHOUT REQUESTED DISCOVERY NOT ONLY FAILS TO PRESENT A BASIS FOR  MODIFYING THE OFFERS, BUT IT IS COMPLETELY UNSUPPORTED BY THE RECORD, AS THE REQUESTED DISCOVERY GOES TO MERITS AND WHETHER THE CLASS CAN BE EXPANDED, AND NOT THE AMOUNT OF BACKPAY THAT ANY INDIVIDUAL CLASS MEMBER MAY BE OWED.**

Without citing any applicable legal authority, Named Plaintiffs argue that they should not have to respond to the Rule 68 offers within the time frame requested because they have requested certain depositions from Defendants and those depositions have not occurred. (Motion at 12-13)   There are two fundamental flaws with this argument.  First, and most significantly, the fact that discovery is ongoing is not a basis for striking or delaying Rule 68 offers.  Indeed, the entire purpose of Rule 68 is to *avoid* unnecessary discovery and litigation,

and that is precisely why Defendants have served the offers in this case – i.e., Defendants are hoping that the offers prompt class members and their counsel to "think hard" about whether the merits and class-scope discovery that counsel intends to pursue – which Named Plaintiffs insist in necessary to litigate these class members' claims but really is not – will actually increase the value of these class members' individual claims beyond what the Defendants are offering in their Rule 68 offers.

Second, as a factual matter, it is simply false that the merits and class-scope discovery that counsel intends to pursue will materially bear on the value of *these* class members' claims. These FLSA claims are valued under simple formulas involving the claimant's pay rate and the number of overtime hours that he worked in the relevant time period.  So, in considering Defendants' Rule 68 offer, a class member's task is to assess the amount of backpay he is owed – based on his pay rate and the number of overtime hours he claims he worked – so that he can determine whether the offer is more favorable than what he is likely to obtain at trial.  This backpay amount will be determined from time and pay records and, to the extent that a class member contends that the records do not reflect all overtime hours worked, from the class member's own records or testimony, if any.[6]  Whether the class ultimately is expanded to *other* workers has no bearing whatsoever on the value of *these* class members' claims.

---

[6]    Judging by the three Named Plaintiffs' responses to Defendants' written discovery requests, the class members intend to establish backpay damages largely or entirely through the time and pay records already produced.  When asked in two different interrogatories to identify the hours that they worked but were not properly paid for, all three Plaintiffs objected on the ground that the information "is either already in the possession of, or equally available to, the Defendants."  (See Responses to Interrogatory Nos. 5 and 6 in Attachment E to Muskat Decl.)  The Named Plaintiffs also said that such hours could be determined by the documents already produced (and which have been in their possession for at least five weeks), as well as other unidentified "documents in Defendants' possession."  (*Id.*)  Similarly, when asked to produce all documents showing hours worked, the Named Plaintiffs made the same objections and again

Each class member who received a Rule 68 offer, as well as Named Plaintiffs' counsel, already has these time and pay records in their possession.  From April 20, 2012 to May 11, 2012, in response to the Named Plaintiffs' document requests, Defendants produced to Named Plaintiffs' counsel time and pay records in their possession for the 51 persons who had opted in by April 17, 2012 (the original opt-in deadline), whether represented by Sico, White or not. (Muskat Decl. ¶ 3)[7]  Thus, at the time the offers were made on June 18, 2012, virtually all of the represented class members and their counsel had already had somewhere between five and eight weeks to review their time and pay records, and the offer itself provides them with 14 additional days in which to do so.  As to unrepresented opt-in class members, Defendants produced along with the Rule 68 offers the same time and pay records that were previously produced to Named Plaintiffs' counsel.  All of that is more than enough time for any class member to determine whether to accept or decline the offer, especially considering that many of the class members performed services as contractors only for a few weeks or months and thus have only limited record sets.

There is no basis whatsoever to Named Plaintiffs' claim that their two requested depositions are essential to evaluate the Rule 68 offers, because neither deposition will generate any material information relevant to the simple backpay formulas that will be used to determine the amount of backpay owed to any individual class member.  The first requested deposition is of Cassie Ramsay, who was a Human Resource manager within the Allis-Chalmers group of companies.  While Ms. Ramsay may have some knowledge of company contracting practices or

---

referred to the documents already produced by Defendants.  (*See* Responses to Request for Production No. 26, Attachment E to Muskat Decl.)

[7]    On June 4 and 21, 2012, respectively, supplemental documents were produced as to four of the class members.  (Muskat Decl. ¶ 3)

other policy or practice issues, she certainly does not have knowledge of the number of hours

that individual class members worked, aside perhaps from what is in the time and pay records

already in the class members' possession.  Similarly, the second requested deposition relates to

contracting practices and class scope issues which, again, will have no bearing on what any of

*these* individual class members will be owed.  (*See* requested topics in Attachment D to Muskat

Decl.)[8]

In sum, while there is no basis to strike or modify a Rule 68 offer based on allegedly

incomplete discovery, in fact in this case the class members and their counsel (where applicable)

are fully able to evaluate the Rule 68 offers based on the information provided to date.

**III.    ORDERING AN EXTENSION OF THE RESPONSE DEADLINE ON DEFENDANTS' RULE 68
OFFERS IS NOT ONLY UNAUTHORIZED BY RULE 68, BUT IT DEFEATS THE PURPOSE OF
THE RULE, WHICH IS TO PROMPT PLAINTIFFS TO EVALUATE THEIR CLAIMS BEFORE
POTENTIALLY EXPENSIVE, BURDENSOME, OR UNNECESSARY DISCOVERY IS
CONDUCTED.**

Unsurprisingly, Named Plaintiffs offer no legal support for their request to extend the

offer response deadlines.  To be sure, the request should be denied.  As explained above, the

---

[8]    As an aside, we would like to address the Named Plaintiffs' claim that Defendants have
not cooperated in presenting these witnesses for deposition.  This is false, and so that the record
is clear, we note that Named Plaintiffs' counsel did not ask for Ms. Ramsay's deposition until
June 14, 2012.  (Attachment D to Muskat Decl.)   Defendants responded to this request by
proposing July 24, 2012 as a deposition date.  (*Id*.)  Named Plaintiffs' counsel said that they
would consider this date but, despite Defendants' follow-up June 21, 2012 email reiterating this
proposed date, still have not confirmed whether the date is acceptable.

With respect to a corporate representative deposition, the last time that Named Plaintiffs'
counsel asked for a corporate representative deposition was on March 23, 2012, immediately
after this Court had denied Defendants' motion for protective order.  (Attachment D to Muskat
Decl.)  Defendants' counsel responded that Defendants were reviewing the Court's denial (*id*.),
and, following Defendants' subsequent filing of a motion for reconsideration of that denial,
Named Plaintiffs' counsel did not mention the corporate representative deposition again –
including when they asked for Ms. Ramsay's deposition on June 14 – until the June 20, 2012
telephone hearing in this matter.  On June 21, 2012, Defendants asked Named Plaintiffs' counsel
to confirm the topics on which they wanted corporate representative deposition testimony (as no
corporate representative deposition notice has ever been served), *id*., but Named Plaintiffs'
counsel has not responded to that request as of the time of this filing.

purpose of Rule 68 is to avoid unnecessary litigation, and thus the risk-shifting aspect of the rule intentionally prompts plaintiffs to "think very hard" about their claims over the 14-day response period.  Thus, on a fundamental level, extending the response deadline for Rule 68 offers until after more litigation occurs subverts the purpose of Rule 68, because it is that very litigation that the offers are designed to potentially avoid or limit.

For these reasons, Defendants respectfully request that the Court reconsider its order extending the response deadline for the Rule 68 offers, and instead permit the class members 14 days from the date of receipt of the offers in which to accept or reject the offers, as stated in the offers themselves and as contemplated by Rule 68.

**IV.  BECAUSE DEFENDANTS ARE LAWFULLY PERMITTED TO SEND RULE 68 OFFERS DIRECTLY TO CLASS MEMBERS WHO HAVE DECLINED TO BE REPRESENTED BY SICO, WHITE OR ANY OTHER COUNSEL, DEFENDANTS RESPECTFULLY REQUEST THAT THE COURT RECONSIDER ITS ORDERS STRIKING THE RULE 68 OFFERS TO UNREPRESENTED CLASS MEMBERS AND BARRING DEFENDANTS FROM CONTACTING SUCH CLASS MEMBERS.**

**A.  The Court's approved Class Notice and Consent forms expressly allowed class members to choose *not* to be represented by Sico, White, and nine class members made that choice.**

Named Plaintiffs complain that Defendants contacted nine class members directly, but they fail to highlight that the Court's approved Class Notice form ***expressly gave class members the right to decline to be represented by Sico, White and, at least implicitly, allowed class members to proceed without counsel.***  Page 2 of the Notice made the following statements:

> If you have questions about the lawsuit or your rights, you may contact [Sico, White] directly at <u>**361-653-3300**</u>, *or you may contact any counsel of your choice. . . .*

> As already stated, *you may elect to seek your own attorney, but that attorney must file a notice of consent for you to proceed in this case.   . . .   **If you are proceeding with an attorney**, your attorney should file the form on your behalf with your written authorization.*

16

(DEN 15, bold and italics added).   Notably, this language was proposed by Plaintiffs' counsel **themselves** when they submitted a proposed Notice along with their motion for conditional certification.   (DEN 10-1)  The Court then incorporated that language into its approved Class Notice form.

The Court similarly adopted the substance of the Notice of Consent form submitted by Named Plaintiffs.  That Notice underscored the class members' ability to proceed without Sico, White's representation by expressly including, on page 2 of the form, a set of blank spaces under the heading, "I am represented by:"  (Remarkably, Named Plaintiffs claim that *Defendants* submitted this version of the form, *see* Motion at 5 n.9, even though the record plainly reveals that this version came from the Named Plaintiffs themselves.  *See* DEN 10-2)

The Court's Class Notice and Consent forms expressly gave class members the right to proceed without Sico, White as their counsel,[9] and the opt-in period subsequently generated substantial evidence supporting the fact that nine opt-in class members – Bruce Ardoin, Ricardo Medrano, Wilmer Cantillo, Ronald Despaigne, Alberto Vargas, Agustin Vasquez, Jose Reverte, Romelio Olivarez, and Eric Doucet – declined representation by Sico, White in favor of proceeding pro se.  This evidence includes:

- The opt-in forms filed by Bruce Ardoin, Ricardo Medrano, Wilmer Cantillo, and Ronald Despaigne were blank in the "I am represented by" section.  (DEN 20, 29, 55, and 56)  The District Clerk subsequently identified these class members as "pro se" on the case docket sheet, listed their residence addresses, and, when documents in the case were filed, expressly noted that these class members would not receive e-mailed notice of the filings (presumably because they had not enrolled in the Court's Electronic Case Filing system).

---

[9]     To be sure, Sico, White has never been appointed counsel on behalf of opt-in class members.  Unlike a Rule 23 representative opt-out class action, where the Court must appoint class counsel and find that such counsel will fairly and adequately represent the class, *see* Fed. R. Civ. P. 23(g), the FLSA collective action mechanism is opt-in and contains no provisions for appointment of class counsel.

- Alberto Vargas filed an opt-in form that did not include the page noting representation. (DEN 35-1) The District Clerk subsequently identified Mr. Vargas as "pro se" on the case docket sheet, listed his residence address, and, when documents in the case were filed, expressly noted that Mr. Vargas would not receive e-mailed notice of the filings (presumably because he had not enrolled in the Court's Electronic Case Filing system).

- Agustin Vasquez filed two opt-in forms. On the first dated March 6, 2012, he listed his own name and address under "I am represented by." (DEN 38) In the second dated May 12, 2012, he wrote "C11-353 as disired" (sic) and then wrote his own address and phone number. (DEN 97) The District Clerk subsequently identified Mr. Vasquez as "pro se" on the case docket sheet, listed his residence address, and, when documents in the case were filed, expressly noted that Mr. Vasquez would not receive e-mailed notice of the filings (presumably because he had not enrolled in the Court's Electronic Case Filing system).

- Jose Reverte also filed two opt-in forms. On the first opt-in form he left the "represented by" section blank (DEN 50), and the District Clerk identified and treated him as pro se. The second opt-in form, dated May 23, 2012, was submitted after the original opt-in deadline had passed. (DEN 112) In that form, Mr. Reverte referenced Sico, White as counsel, but gave his own address and phone number in the "represented by" section. On June 25, 2012, Defendants' counsel received a self-addressed stamped envelope from Mr. Reverte containing what appears to be a form relating to his work uniform. (Attachment G to Muskat Decl.)

- Romelio Olivarez's opt-in form had "N/A" written over the section in which to list representation. (DEN 39) The District Clerk thusly identified and treated him as pro se.

- Eric Doucet filed an opt-in form with his own name and address in the "I am represented by" section. (DEN 26) The District Clerk identified and treated him as pro se. On June 25, 2012, Defendants' counsel received Mr. Doucet's form accepting his Rule 68 offer. (Attachment F to Muskat Decl.)

And there is one more critical piece of evidence that Defendants relied upon in concluding that these class members were unrepresented: On April 20, 2012, three days after the original opt-in period closed, Sico, White filed a Notice of Appearance on behalf of twenty-three (23) class members, several of whom had previously listed themselves as their own counsel on their opt-in forms and one of whom had left the representation space blank. (DEN 93). This filing confirms that Sico, White was aware of the need to properly appear on behalf of anyone

who desired its representation.  Moreover, none of the nine pro se class members at issue were listed on this Notice of Appearance, clearly suggesting that Sico, White had not been successful in enlisting these nine class members as clients.  The eminently reasonable conclusion to draw from these events was that these class members continued to desire to proceed on their own or, at the very least, had given no indication that they wished to proceed differently.

In their Motion, Named Plaintiffs assert that Sico, White now represents two of the previously unrepresented class members, Wilmer Cantillo and Ronald Despaigne.  (Motion at 5)[10]   As described above, Mssrs. Cantillo and Despaigne filed opt-in forms that left the "I am represented by" section blank, and Sico, White never subsequently entered an appearance on their behalf – even though they did enter such an appearance on April 20, 2012 with respect to 23 other class members, including some previously unrepresented class members.   At a minimum, Sico, White's failure to correct the record would reasonably lead one to believe that Messrs. Cantillo and Despaigne were no different than the seven other concededly unrepresented class members.

Named Plaintiffs challenge Defendants' contact with these nine class members by citing cases involving pre-certification contact with *potential* class members which was designed to discourage those potential class members' participation in the case.  (Motion at 4-5, 15, citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) and *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003)).   Here, though, no offer went to any potential class member—the offers went only to opt-in class members almost two months after those class members had opted in, and Named Plaintiffs cite no authority for the proposition that a defendant cannot make a Rule 68 offer to an

---

[10]     Named Plaintiffs offer no proof in support of this assertion and do not state when the representations began.

opt-in plaintiff just because there are other class members who have not yet opted in.[11]  And as a factual matter, as to potential class members who have received opt-in forms but have not yet decided whether to opt in, there is no evidence that any such person (a) is aware of any of the Rule 68 offers; or (b) would be discouraged from joining the case even if he did know.  Quite to the contrary, the reasonable assumption would be that potential class members would have a *greater* incentive to join the case if they believed that Defendants might make them a prompt settlement offer.

> **B.     Striking the Rule 68 offers to unrepresented class members not only impedes Defendants' right to deal with unrepresented class members directly, but it deprives those class members of the opportunity to consider Defendants' offers.**

At least seven class members have chosen, thus far, to proceed without counsel in this matter.   The Court's Order nullifying the Rule 68 offers to these individuals means that these class members, and the two additional class members that Sico, White now says it represents, will not have the opportunity consider the offers.  There is evidence that class members would like the opportunity to consider the offers—after the Court struck these offers, unrepresented

---

[11]      Because this case does not involve communications with class members who have not yet opted in, *Belt v. Emcare,* 299 F. Supp. 2d 664 (E.D. Tex. 2003), upon which Named Plaintiffs rely heavily, is clearly distinguishable.  *Belt* involved defendants' communications to **putative** class members in an FLSA collective action suit just before a court-approved notice form was sent.  The court held that these communications were misleading and coercive, and could be enjoined because they had the effect of improperly discouraging these **putative** class members from joining the suit and thereby interfering with their potential rights.  *Belt*, 299 F. Supp. 2d at 666-68.   Here, by contrast, not only is there absolutely nothing coercive or misleading in Defendants' Rule 68 offer, but, most significantly, the unrepresented persons *have opted in to the case* and are *parties* to the case who declined to be represented by Sico, White or anyone else.  Thus, unlike in *Belt*, Defendants' contact was proper and, because it was only to persons who have opted in, it could not have had the effect of discouraging anyone from joining the suit. And if these unrepresented class members determine later on that they would prefer to be represented by counsel, they may retain such counsel, whether it be Sico, White or some other firm.

class member Eric Doucet returned a signed form accepting his offer.  (Attachment F to Muskat Decl.)

Defendants believe that the Court should reconsider its ruling that the offers to the nine unrepresented class members are null and void, and allow Defendants to immediately re-serve the offers on unrepresented class members directly.  But if the Court disagrees, then as an alternative Defendants would respectfully request that they be permitted to immediately make new offers to these class members by serving the offers on Named Plaintiffs' counsel. Defendants also propose serving on each unrepresented class member copies of the offers served on every other class member, and serving on Named Plaintiffs' counsel (as representatives of the represented class members) copies of the offers served on the unrepresented class members.

**V.   NAMED PLAINTIFFS SHOULD BE ORDERED TO IDENTIFY AND PROVIDE EVIDENTIARY SUPPORT AS TO ALL CLASS MEMBERS REPRESENTED BY SICO, WHITE NOW AND IN THE FUTURE, AND SICO, WHITE SHOULD BE ORDERED TO ENTER AN APPEARANCE ON BEHALF OF SUCH PERSONS TO THE EXTENT THEY HAVE NOT ALREADY DONE SO.**

Local practice is to enter an appearance on behalf of each party represented, and Sico, White followed this practice with respect to the 23 class members for whom they appeared on April 20, 2012.   To the extent there are now additional class members that Sico, White claims to represent, Defendants and the Court are entitled to know who these class members are.  Because Sico, White has ignored its obligation to appear on behalf of class members, and then played "gotcha" when Defendants reasonably relied on the class members' opt-in forms and Sico, White's actions (or lack thereof) to determine who is represented, Defendants respectfully request that the Court order Sico, White to (a) identify and provide evidentiary support showing all class members whom they represent, and (b) to the extent they have not already done so, formally enter an appearance on those persons' behalf.

## VI.    THERE IS NO BASIS FOR IMPOSING MONETARY OR OTHER SANCTIONS AGAINST DEFENDANTS, BECAUSE THEY CLEARLY DID NOT ACT IN BAD FAITH.

As "sanctions" against Defendants, Named Plaintiffs request that the Rule 68 offers be stricken, Defendants be prohibited from contact with "potential and actual class members," Defendants be prohibited from making future Rule 68 offers without court approval, and that "remedial notice" be distributed to "potential" class members.    (Motion at 14-15)   Named Plaintiffs also propose, in their proposed order, that Defendants pay an unspecified sum of money to unspecified persons.

There is no basis for these or any other sanctions against Defendants.   As the legal grounds for sanctions, the Named Plaintiffs rely on the Court's inherent power, which permits the Court to assess sanctions for a party's bad faith, willful disobedience of a court order, or fraud on the court.    When imposing sanctions for bad-faith conduct, the Court must make a specific finding of such bad faith.    *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).

There is no basis on which to find that Defendants have engaged in bad faith conduct. Far from it, Defendants have had a good-faith and reasonable basis for all actions they have taken.   First, with respect to Defendants' issuance of Rule 68 offers, the facts and law cited above support the fact that Defendants' Rule 68 offers are wholly valid and that they are a legitimate use of the Rule 68 procedure.   Even if the Court ultimately disagrees with those positions, there is no basis to find that Defendants have acted in bad faith in making the offers.

With respect to the Named Plaintiffs' claim that Defendants should be sanctioned for sending Rule 68 offers to two class members purportedly represented by Sico, White, again, there is no basis on which to find that such contact was in bad faith, let alone that it violated any ethical rule.   As the Court is aware, the applicable Texas Rule of Professional Conduct prohibits contact with opposing parties that the lawyer "***knows*** to be represented by another lawyer

regarding that subject." Tex. Disciplinary R. Prof. Conduct 4.02(a) (emphasis added).   Here, Defendants had no such knowledge, as they did not know that Mssrs. Cantillo and Despaigne were represented by Sico, White.   Quite to the contrary, based on the numerous and extensive facts described above, Defendants had a good-faith and reasonable basis for believing that these two class members (along with the seven other class members who are concededly unrepresented) were proceeding without representation and could be contacted directly as pro se litigants.   Defendants' good faith and reasonable conduct was underscored by the opening paragraph in Defendants' cover letters (sent in both English and Spanish), which stated that if Defendants are incorrect about the class members' unrepresented status, the class members should forward the letter and materials to their counsel and ask counsel to make contact with Defendants' counsel as soon as possible.   (Attachment B to Muskat Decl.)[12]   Mr. Despaigne apparently followed this course of action upon receiving the materials.

In sum, Defendants' actions have been in good faith, reasonable, and, we believe, appropriate.   There is no basis on which to find bad faith as would be necessary to impose sanctions of any kind.

**VII.   DISCOVERY REQUESTS SENT TO THE NINE UNREPRESENTED CLASS MEMBERS ARE WITHDRAWN PURSUANT TO THE COURT'S JUNE 21, 2012 LETTER TO THESE CLASS MEMBERS.**

With the good-faith and reasonable belief that the nine class members at issue were unrepresented, Defendants served written discovery requests on these class members on June 19, 2012.   (Attachment C to Muskat Decl.)   The Court's June 21, 2012 letter to these class members nullifies and withdraws these requests.   Defendants respectfully request that they be permitted to

---

[12]     Defendants sent all other Rule 68 offers to Sico, White.   (Attachment A to Muskat Decl.)

re-serve the discovery on all unrepresented class members, and in doing so, Defendants will serve copies on Named Plaintiffs' counsel as well.

<u>**CONCLUSION AND PRAYER FOR RELIEF**</u>

In sum, Defendants respectfully request the following relief:

1.      That the Court DENY Plaintiffs' request to "strike" the Rule 68 offers sent to the class members represented by Sico, White or otherwise modify the offers' terms in any way;

2.      That the Court RECONSIDER and RESCIND its June 21, 2012 order extending the response deadline by 60 days as to the outstanding Rule 68 offers, and that the Court ORDER that the class members represented by Sico, White have 14 days from the date that they received the offer in which to respond (as stated in the offers themselves);

3.      That the Court (a) RECONSIDER and RESCIND its June 21, 2012 order holding the offers to the unrepresented class members to be null and void, (b) authorize Defendants to re-serve those offers directly on all such class members who are unrepresented, and (c) to the extent that Sico, White has claimed to represent any of them, to send the re-served offers to Sico, White rather than on the class members directly;

4.       That the Court RECONSIDER and RESCIND its June 21, 2012 order barring Defendants from having direct contact with unrepresented class members for any purpose, and that the Court send all unrepresented class members a follow-up letter stating that (a) Defendants will re-serve their Rule 68 offers, and (b) that Defendants' counsel may contact the class members directly to the extent they are unrepresented by counsel;

5.      That the Court ORDER Sico, White to immediately (a) identify and provide evidentiary support as to all class members represented by their firm now and in the future, and (b) enter an appearance on behalf of all such persons to the extent they have not already done so; and

6.    DENY Named Plaintiffs' request for sanctions, monetary or otherwise.

A proposed Order has been attached.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Michael J. Muskat
MICHAEL J. MUSKAT
Attorney-in-Charge
State Bar No. 24002668
S.D. Tex. Bar No. 22816
MUSKAT, MARTINEZ & MAHONY, LLP
1201 Louisiana Street, Suite 850
Houston, Texas 77002
Telephone:  713-987-7850
Telecopier:  713-987-7854

Attorneys for Defendants

</div>

OF COUNSEL:

GABRIELLE S. MOSES
State Bar No. 24063878
ALLISON R. MAY
State Bar No. 24059281
MUSKAT, MARTINEZ & MAHONY, LLP
1201 Louisiana Street, Suite 850
Houston, Texas 77002
Telephone:  713-987-7850
Telecopier:  713-987-7854

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 29, 2012, a true and correct copy of this pleading has been served on Named Plaintiffs' counsel of record via the Electronic Case Filing system.  Defendants are not serving this pleading on the parties that the docket sheet lists as pro se, pending further guidance from the Court as to these parties' status.

/s/ Michael J. Muskat
Michael J. Muskat