IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSE ANGEL LOPEZ, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 2:11-CV-00353 |
| ALLIS-CHALMERS ENERGY INC., et al., | § § § | |
| Defendants. | § § | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") is entered into between Plaintiffs Jose Angel Lopez, Michael James Lyons, Enoldo Leyva, Odis Graham, Jr., Francisco Avalos, and Wilmer Cantillo (collectively, the "Named Plaintiffs"), individually and on behalf of all Eligible Class Members as defined below, and Defendants ALLIS-CHALMERS ENERGY INC., ALLIS CHALMERS TUBULAR SERVICES LLC F/K/A ALLIS-CHALMERS TUBULAR SERVICES, INC., ARCHER TUBULAR SERVICES LLC, ARCHER DRILLING LLC, ALLIS-CHALMERS MANAGEMENT LLC, ARCHER RENTAL SERVICES LLC, ARCHER PRODUCTION AND COMPLETION SERVICES LLC, ARCHER DIRECTIONAL DRILLING SERVICES LLC, AND ARCHER UNDERBALANCED SERVICES LLC (collectively, "Defendants"), subject to the approval of the Court.

## DEFINITIONS

1. As used in this Settlement Agreement, the following terms shall have the following meanings:

    a. "Claim Form" means the forms provided in English and Spanish for Expanded Class Members to submit in order to obtain a Settlement Award under this Settlement Agreement, pursuant to the terms of the Court's Preliminary Approval Order. The Class Notice shall be substantially in the forms attached as Exhibit A to this Settlement Agreement.

    b. "Claims Administrator" means Heffler, Radetich & Saitta LLP ("Heffler").

    c. "Claims Submission Period" means the time period of seventy-five (75) days commencing on the date when the Class Notice and Claim Form are initially mailed to the Expanded Class Members, in which they may submit their executed Claim Forms to receive a

# EXHIBIT A

Settlement Award under this Settlement Agreement. Original Class Members are not required to resubmit a Claim Form, but will receive the Class Notice.

        d.      "Class Counsel" means Sico, White, Hoelscher & Braugh, L.L.P.

        e.      "Class Notice" means the Notice of Collective Action Lawsuit and Settlement to be sent to Eligible Class Members in English and Spanish, pursuant to the terms of the Court's Preliminary Approval Order. The Class Notice shall be substantially in the form attached as Exhibit A to this Settlement Agreement.

        f.      "Collective Action" refers to the above-captioned civil action, as amended, titled *Lopez et al. v. Allis Chalmers Energy Inc., et al.*, pending in the United States District Court for the Southern District of Texas, Civil Action No. 2:11-cv-00353.

        g.      "Damages Period" means the following: (1) Separately as to each Original Class Member, the time period between (a) the date that is three years prior to the date of opt-in, and (b) the date that the Settlement Award is finalized for that Original Class Member; and (2) separately as to each Expanded Class Member, the time period from October 1, 2010 to the date that the Settlement Award is finalized for that Expanded Class Member.

        h.      "Defendant Released Parties" shall encompass each Defendant and all past, present, and future owners, parents, subsidiaries, affiliated companies, divisions, predecessors, successors, and any merged entities, and any current or former officer, director, owner, agent, representative, legal counsel, employee, or shareholder of all such entities. The Parties agree that each of the Defendant Released Parties is an intended third-party beneficiary of the releases, representations, warranties, and obligations of the Settling Class Members under this Agreement.

        i.      "Effective Date" means the date of final approval of this Settlement Agreement by the Court (the "Final Approval Order") and expiration of the time for filing or noticing any appeal of the Final Approval Order (*i.e.*, 30 days from the Final Approval Order or any extension of the time for appeal); or if an appeal is filed, the date of final affirmation of the Final Approval Order on any appeal, the expiration of the time for petitions for allowance of appeal, and, if the petition is granted, the date of final affirmation of the Final Approval Order following review pursuant to that grant or the date of final dismissal of any appeal or proceedings under appeal.

        j.      "Eligible Class Member" means all (1) Original Class Members, and (2) Expanded Class Members, all of whom fall within the class of persons who Named Plaintiffs seek to represent in the Collective Action.

        k.      "Expanded Class Member" means any person who performed services for Allis-Chalmers Drilling LLC n/k/a Archer Drilling LLC, Allis-Chalmers Underbalanced Services LLC n/k/a Archer Underbalanced Services LLC, Allis-Chalmers Production Services LLC, Archer Completion Services LLC, Archer Production and Completion Services LLC, Allis-Chalmers Directional Drilling Services LLC n/k/a Archer Directional Drilling Services

2

LLC, or Allis-Chalmers Rental Services LLC n/k/a Archer Rental Services LLC, from October 1, 2010 to the date this Agreement is fully executed, and who falls into one or more of the following six settlement categories: (1) independent contractors paid a straight hourly rate for all hours worked and who were not paid overtime, excluding (a) certain individuals who Defendants believe were properly classified as independent contractors, and (b) contractors who did not work any overtime in any workweek during the Damages Period; (2) independent contractors paid a day rate and who were not paid overtime, excluding (a) contractors within Allis-Chalmers Directional Drilling Services LLC n/k/a Archer Directional Drilling Services LLC who held the positions of Directional Driller or MWD, and (b) contractors who were paid a day rate but did not work any overtime in any workweek during the Damages Period; (3) employees paid a day rate as their primary form of compensation with no overtime, excluding (a) day rate employees for Allis-Chalmers Underbalanced Services LLC n/k/a Archer Underbalanced Services LLC and/or Aircomp, LLC, who were the subject of *Thomas et al. v. Allis-Chalmers Energy, Inc. and AirComp, LLC*, Civil Action No. 2:10-cv-01591-RCM, in the U.S. District Court for the Western District of Pennsylvania, and (b) certain supervisors in Allis-Chalmers Tubular Services LLC n/k/a Archer Tubular Services LLC who were guaranteed certain day-rate payments per week; (4) Nonexempt field employees paid a guaranteed salary but no overtime, excluding salaried employees who Defendants believe were properly classified as exempt; (5) nonexempt field employees paid on a salary basis plus a job bonus, but no overtime, excluding salaried employees who Defendants believe were properly classified as exempt; and (6) nonexempt field employees paid on an hourly basis plus a job bonus, and were paid overtime but the job bonus was not factored into the regular rate of pay.

l. "Extended Claims Submission Period" means the time period of sixty (60) days commencing on the date when the Class Notice and Claim Form is re-mailed to an Eligible Class Member whose Class Notice and Claim Form were returned to the Claims Administrator as undeliverable.

m. "Final Approval Hearing" means the hearing to be requested by the Parties and conducted by the Court at which time the Parties will request the Court to approve the fairness, reasonableness, and adequacy of the terms and conditions of the proposed settlement and this Settlement Agreement and to enter a Final Judgment.

n. "Gross Settlement Amount" means the total gross amount of all Settlement Awards plus the amount to be paid to Class Counsel in attorneys' fees.

o. "Original Class Member" means any person who (1) worked for Allis-Chalmers Tubular Services LLC n/k/a Archer Tubular Services LLC, (2) received notice of this Collective Action pursuant to Court Orders dated February 8, 2012 and/or April 20, 2012, and (3) filed an opt-in form by August 31, 2012. The Original Class Members include but are not limited to the Named Plaintiffs.

p. "Parties" means the Named Plaintiffs and Defendants.

q. "Released Claims" means any and all claims, demands, rights, liabilities, actions, causes of action, and/or other legal responsibilities, in any form whatsoever, whether

3

known or unknown, against the Defendant Released Parties for unpaid wages, liquidated damages, attorneys' fees, costs, equitable relief, or any other relief available under the Fair Labor Standards Act or any other federal, state, or local law relating to the payment of wages. "Released Claims" includes a waiver of the provisions of California Civil Code Section 1542 and similar laws in other jurisdictions. California Civil Code Section 1542 provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

    r.    "Settlement Agreement" means this Agreement and all Exhibits attached to it.

    s.    "Settlement Award" means the gross payment that each Settling Class Member shall be entitled to receive pursuant to the terms of the Settlement Agreement.

    t.    "Settling Class Member" means and includes (1) Original Class Members, and (2) Expanded Class Members who return a Claim Form to the Claims Administrator within the Claims Submission Period or, if applicable, Extended Claims Submission Period.

    u.    "Workweek" means the Sunday to Saturday workweek; provided, however, that as to certain workers of Archer Production and Completion Services LLC beginning in February 2012, "Workweek" means the Saturday to Friday workweek.

## RECITALS

2. In the Collective Action, Named Plaintiffs alleged that Defendants failed under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") to pay all overtime compensation due, pay for all hours worked, and comply with the FLSA's minimum wage obligations with respect to themselves and all similarly situated persons.

3. Defendants deny that they have any liability to the Named Plaintiffs or any similarly situated persons. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants or Defendant Released Parties of any fault, liability, or wrongdoing. Defendants expressly deny fault, liability, or wrongdoing.

4. The Parties have conducted relevant discovery and investigated the facts relating to the claims alleged and have made a thorough study of the legal principles applicable to the claims asserted against Defendants in the Collective Action. Based upon Class Counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the Parties' assessment of the uncertainties of litigation and the relative benefits conferred upon the Eligible Class Members pursuant to this Settlement Agreement, Class Counsel have concluded that the settlement with Defendants on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Named Plaintiffs and the Eligible Class Members.

5. The Parties recognize that notice to the Eligible Class Members of the material terms of this Settlement Agreement, as well as Court approval of the Settlement Agreement, are required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Court grants final approval of it and the Settlement Agreement becomes effective.

6. The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) with respect to the Eligible Class Members have been and are met.

7. NOW THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the undersigned, that the Collective Action shall be settled, subject to the approval of the Court, pursuant to the following terms and conditions:

## RELEASES

8. <u>Release</u>. It is hereby agreed, by and between the Named Plaintiffs, Settling Class Members, and Defendants, through their counsel of record, and subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, that upon entry of a final order approving this Settlement, that each Settling Class Member shall be deemed to have jointly and severally released and discharged the Defendant Released Parties from any and all Released Claims.

9. <u>Release Language in Claim Form and on Settlement Checks</u>. The Claim Form to Expanded Class Members shall include the following release language. The Claims Administrator shall also include the release language on the back of each settlement check:

> By negotiating this check and accepting payment I agree that I have waived and released the Defendant Released Parties from all Released Claims as defined in the Settlement Agreement and the Class Notice in this matter.

## CERTIFICATION, NOTICE, AND CLAIMS PROCESS

10. <u>Request for Preliminary Approval Order</u>. Within two (2) business days after the execution of this Agreement by Class Counsel and Defendants, Named Plaintiffs will file with the Court the Joint Motion for Preliminary Approval of the Settlement Agreement, and proposed Order granting same, attached to this Agreement as Exhibits C and D. In essence, the Joint Motion will request that the Court preliminarily approve the Settlement Agreement, which will among other things include certifying an expanded class for settlement purposes only, authorizing the Claims Administrator's issuance of the Class Notice and Claims Forms attached to this Agreement as Exhibits A and B, and setting the date for the Final Approval Hearing.

11. <u>Class Notice</u>. Notice of this settlement shall be provided to the Eligible Class Members. The Parties agree that the proposed procedures for notice provide the best practicable notice to the Eligible Class Members:

      a.    The Claims Administrator shall be responsible for preparing, printing and mailing to all Eligible Class Members the Class Notice, and to all Expanded Class Members the Claim Form, attached to this Settlement Agreement as Exhibits A and B, as directed and approved by the Court.

      b.    Within seven (7) days following the entry of a Preliminary Approval Order, Defendants shall provide the Claims Administrator with a list of Eligible Class Members including each class member's last known mailing address and social security number, a notation as to whether each class member is an Original Class Member or an Expanded Class Member, and the template Class Notice and Claim Forms attached to this Agreement as Exhibits A and B.

      c.    In order to provide the best notice practicable, and before mailing the Class Notice and Claim Form, the Claims Administrator will run the list of Eligible Class Members through the U.S. Postal Service's National Change of Address database ("NCOA") and update the list as necessary.

      d.    Within twenty-one (21) days after receiving the list of Eligible Class Members, and after having run the address trace described above and updated the Eligible Class Member list if necessary, the Claims Administrator shall send a copy of the Class Notice substantially in the form attached hereto as Exhibit A to all Eligible Class Members, and a copy of the Claim Form substantially in the form attached hereto as Exhibit B to all Expanded Class Members, via first-class mail, postage prepaid, using the most current mailing address information available as set forth above, and the mailing shall include a self-addressed postage prepaid return envelope.

      e.    Any Class Notice and/or Claim Form returned to the Claims Administrator before the expiration of the Claims Submission Period as undeliverable shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, then the Claims Administrator shall use People Map or a comparable Social Security Number-based locator to determine if there is any more current mailing address. If the locator reveals a more current mailing address, the Claims Administrator shall resend the Class Notice and/or Claim Form to that address. If the locator does not reveal a more current mailing address, the Claims Administrator shall resend the Class Notice and/or Claim Form to the original mailing address.

      f.    No Expanded Class Member shall have the right to obtain any payment through this Settlement Agreement unless he/she submits a completed Claim Form on or before the expiration of the Claims Submission Period or, if applicable, the Extended Claims Submission Period.

      g.    The Claims Administrator shall exclusively handle the mailing of the Notice and Claims forms, the receipt of executed Claims forms, communications with Eligible Class Members (the sole exception being if an Eligible Class Member initiates a communication to Class Counsel), and the disbursement of Settlement Awards. The Claims Administrator will be retained and paid for by Defendants. The payment to the Claims Administrator will not reduce the recovery of any Settling Class Member.

12. <u>Determination of Settlement Award Eligibility</u>. All Original Class Members are automatically eligible to receive a Settlement Award because they have already affirmatively opted in and joined the litigation by returning an opt-in form. The Original Class Members' Settlement Awards shall be based on upon the Award formula set out in paragraph 16(b) below. All Expanded Class Members who submit a valid and timely Claim Form will be eligible to receive a Settlement Award based upon the Award formulas set out in paragraph 16(c) below. The Class Notice and/or Claim Form shall include instructions on how to submit the Claim Form, and shall notify recipients that the Claim Form must be completed and postmarked by the expiration of the Claims Submission Period.

13. <u>Interim Reports by the Claims Administrator</u>. Each business day during the Claims Submission Period and any Extended Claims Submission periods, the Claims Administrator shall provide counsel for Defendants with a report showing the Expanded Class Members who returned the Claim Form that day, including copies of all Claims Forms submitted. Defendants' counsel shall provide these reports and Claims Forms to Class Counsel.

14. <u>Final Approval Hearing and Final Judgment</u>. If the Court certifies a collective action for purposes of settlement and preliminarily approves this Agreement, the Parties shall jointly request that the Court schedule a Final Approval Hearing to determine final approval of the settlement and enter a Final Judgment that does as follows:

    a. certifies a Collective Action for settlement purposes under § 216(b) of the FLSA;

    b. finally approves the Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of this action;

    c. directs that the settlement funds, including attorneys' fees, be distributed in accordance with the terms of the Settlement Agreement;

    d. directs that this action be dismissed with prejudice and in full and final discharge of any and all Released Claims.

The proposed Final Judgment to be filed is attached to this Agreement as Exhibit E.

After entry of the Final Judgment, the Court shall have continuing jurisdiction for purposes of addressing: (1) settlement administration matters; and (2) such post-Final Judgment matters as may be appropriate under Court rules or as set forth in this Settlement Agreement.

## SETTLEMENT FUNDS AND AWARD CALCULATION

15. <u>Gross Settlement Amount</u>.

    a. <u>Settlement Awards</u>. No later than 60 days after the conclusion of the last applicable Extended Claims Submission period, Defendants shall disclose to the Claims Administrator the amount of the Settlement Award due each Settling Class Member calculated according to the formulas set forth below in paragraphs 16(b) and (c).

    b. <u>Deposit</u>. Within thirty (30) days after the Effective Date, Defendants shall deliver the Gross Settlement Amount to the Claims Administrator. Upon receipt by the Claims Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund pursuant to Internal Revenue Code Section 1.468B-1. Within five (5) business days after submitting these funds to the Claims Administrator and receiving an election statement from the Claims Administrator, Defendants shall execute an election statement provided by the Claims Administrator which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start date of the Qualified Settlement Fund.

    c. <u>Disbursement by Claims Administrator</u>. Within fourteen (14) business days after delivering the Gross Settlement Amount to the Claims Administrator, the Claims Administrator shall mail settlement checks to Settling Class Members from the Qualified Settlement Fund account. The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund Account.

    d. <u>Interest</u>. The interest on the funds deposited by Defendants will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

  16. <u>Payments</u>. Subject to the Court approval and for purposes of effectuating this Settlement Agreement, the following amounts shall be paid by the Claims Administrator from the Gross Settlement Amount:

    a. <u>Attorneys' Fees</u>.

     (i) Named Plaintiffs will request an award of attorneys' fees in the amount of $1,150,000.00, which will compensate Class Counsel for work already performed in this Collective Action, including attorneys' fees, litigation expenses and costs, as well as all of the work remaining to be performed in this Collective Action, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Collective Action. Defendants will not oppose Named Plaintiffs' request for an award of attorneys' fees in the amount of $1,150,000.00. Named Plaintiffs and Settling Class Members will not request more than $1,150,000.00 in attorneys' fees, and Class Counsel represents that this amount fairly compensates Class Counsel for their work in this matter. If the Court declines to give preliminary or final approval to the requested attorneys' fees, the Parties will request that the Court determine a reasonable fee based on proof and argument submitted by Class Counsel, and Class Counsel, the Named Plaintiffs, and Settling Class Members will accept the amount as determined by the Court to be incorporated into this Agreement and reflected in appropriate changes to the Class Notice. In the event that the Court does not approve the request for $1,150,000.00 in attorneys' fees, Class Counsel may attempt to assert any rights under its contingent fee contracts with certain class members.

     (ii) The Claims Administrator shall pay the attorneys' fees from the Qualified Settlement Fund no later than the fourteenth (14th) day following the Effective Date.

8

The attorneys' fees payment will not burden or reduce the amount paid to Settling Class Members.

(iii) Each side shall bear its own costs.

(iv) The attorneys' fees paid by Defendants pursuant to this Agreement shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in this Collective Action on behalf of the Named Plaintiffs and/or any Eligible Class Member, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of the Named Plaintiffs or Eligible Class Members.

(v) A Form 1099 shall be provided to Class Counsel for the payment made to Class Counsel. Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

b. <u>Settlement Awards to Original Class Members</u>. All Original Class Members shall be paid a Settlement Award, to be calculated as follows: For each Workweek during the applicable Damages Period, each Original Class Member will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each Original Class Member. Each Original Class Member will also be paid liquidated damages in an amount equal to the total backpay amount. Defendants will determine hours worked per week by using company pay invoices only. Defendants will determine the regular hourly rate for each week by using company pay records.

c. <u>Settlement Awards to Expanded Class Members</u>. All Expanded Class Members who timely return a Claim Form shall be paid a Settlement Award. For purposes of determining Settlement Awards, each Expanded Class Member who timely returns a Claim Form shall be assigned to one or more (as applicable) of six categories depending on the Expanded Class Member's classification as an independent contractor or employee and his/her form of compensation. The category or categories to which an Expanded Class Member is assigned will determine the formula(s) to be used to determine that Expanded Class Member's Settlement Award. The applicable formulas will be applied for each Workweek in each Expanded Class Member's Damages Period. The categories and the Settlement Award formulas are set out below:

> **Category 1: Independent contractors paid a straight hourly rate for all hours worked and not paid overtime.** For each Workweek during the Damages Period, these contractors will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each contractor. These contractors will also be paid liquidated damages in an amount equal to the total backpay amount. Defendants will determine hours worked per week by using company pay invoices only. Defendants will determine the regular hourly rate for each week by using company pay records. (This category does not include certain individuals who Defendants believe

9

were properly classified as independent contractors and does not include contractors who did not work any overtime in any Workweek during the Damages Period.)

**Category 2: Independent contractors paid a day rate and were not paid overtime.** For each Workweek during the Damages Period, these contractors will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each contractor. These contractors will also be paid liquidated damages in an amount equal to the total backpay amount. Defendants will determine the day rate for each week, and number of day rate payments for each week, by using company pay records only. The hours worked on each day on which a day rate was paid will be twelve (12). (This category does not include contractors within Allis-Chalmers Directional Drilling Services LLC n/k/a Archer Directional Drilling Services LLC who held the positions of Directional Driller or MWD and does not include contractors who were paid a day rate but who did not work any overtime in any Workweek during the Damages Period.)

**Category 3: Employees paid a day rate as their primary form of compensation with no overtime.** For each Workweek during the Damages Period, these employees will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate (determined by totaling all day-rate payments during the week and any other nondiscretionary compensation and dividing by the number of hours worked in the week) by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each employee. These employees will also be paid liquidated damages in an amount equal to the backpay amount. Defendants will determine the day rate for each week, whether there were any other nondiscretionary compensation payments made, and the number of day rate payments for each week, by using company pay records only. The hours worked on each day on which a day rate was paid will be twelve (12). (This category does not include day rate employees for Allis-Chalmers Underbalanced Services LLC n/k/a Archer Underbalanced Services LLC and/or Aircomp, LLC, who are the subject of *Thomas et al. v. Allis-Chalmers Energy, Inc. and AirComp, LLC*, Civil Action No. 2:10-cv-01591-RCM, in the U.S. District Court for the Western District of Pennsylvania. Nor does it include certain supervisors in Allis-Chalmers Tubular Services LLC n/k/a Archer Tubular Services LLC who were guaranteed certain day-rate payments per week.)

**Category 4: Nonexempt field employees paid a guaranteed salary but no overtime.** For each Workweek during the Damages Period, these employees will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate (determined by totaling weekly salary and any other nondiscretionary compensation and dividing by the number of hours worked in the week) by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each employee. These employees will also be paid liquidated damages in an amount equal to the total backpay amount. Defendants will determine weekly salary and any other nondiscretionary payments using company pay records only. To determine hours worked per Workweek,

Defendants will apply the following agreed-upon assumptions, depending on the subsidiary and job position held:

1. <u>Underbalanced entity</u>

   a. <u>All positions except Administrative positions:</u> 60 hours worked per Workweek.

   b. <u>Administrative positions (excluding receptionists, who are not included in the category):</u> 45 hours worked per Workweek

2. <u>Production and Completion entity</u>

   a. <u>Pump Operator/Shop Hand positions</u>: 44 hours worked per Workweek.

   b. <u>Mechanics (Grease Operators and Supervisors)</u>: 65 hours worked per Workweek. The total damages for these employees will be multiplied by .75 to account for these employees' rotating schedules of three weeks on, one week off.

   c. <u>Mechanic (Coil)</u>: 60 hours worked per Workweek.

   d. <u>DOT Field Technician</u>: 45 hours worked per Workweek.

   e. <u>Administrative (excluding receptionists, who are not included in this category)</u>: 45 hours worked per Workweek.

3. <u>Tubular entity</u>

   a. <u>Operation Positions</u>: 50 hours worked per Workweek.

   b. <u>Shop Hand</u>: 45 hours worked per Workweek.

   c. <u>Administrative (excluding receptionists, who are not included in this category)</u>: 45 hours worked per Workweek.

(This category does not include salaried employees who Defendants believe were properly classified as exempt.)

**Category 5: Nonexempt field employees paid on a salary basis plus a job bonus, but no overtime.** For each Workweek during the Damages Period, these employees will be paid a backpay amount determined by multiplying overtime hours by the regular hourly rate (determined by totaling weekly salary, job bonuses, and any other nondiscretionary compensation and dividing by the number of hours worked in the week) by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount

11

for each employee. These employees will also be paid liquidated damages in an amount equal to the backpay amount. Defendants will determine weekly salary, job bonuses, the number of jobs worked per week, and any other nondiscretionary payments using company pay records only. To determine hours worked per Workweek, Defendants will apply the following agreed-upon assumptions, depending on the subsidiary and job position held:

1. <u>Underbalanced</u>: Twelve (12) hours worked per day and add 4 hours of "shop" time in relation to each job worked.

2. <u>Production and Completion</u>: Twelve (12) hours per day while on a job. In addition:

   a. <u>Coil</u>:

      (i) <u>Corpus Christi</u>: If there was no job bonus paid on a particular day, assume that employees worked in the shop 8 hours on a Monday through Friday and 4 hours on Saturday. If there is a job bonus, assume 12 hours for that day (rather than the 8 hours or 4 hours that would otherwise be assumed for shop time). Beginning on July 1, 2011, thebackpay amount for a class member would be multiplied by .786 (22 / 28) to account for a rotating schedule of 22 days on, 6 days off.

      (ii) <u>Mt. Morris and Muncy</u>: Assume 12 hours worked per job. Prior to February 1, 2012, operators were on 28/14 rotation and office staff were on 21/7 rotation. So their total backpay amounts during this time period would be multiplied by .667 (28 / 42) and .75 (21 / 28), respectively. After February 1, 2012, mechanics went on rotation 28/10, and so their total backpay amounts during this time would be multiplied by .737 (28 / 38). (Everyone else stayed the same.)

      (iii) <u>Longview</u>: (a) Chesapeake unit: Assume 12 hours worked per day in which a job bonus was paid. Their total backpay amounts would be multiplied by .667 (14 / 21) to account for a 14 days on, 7 days off rotating schedule; (b) Other unit: Assume 12 hours worked per day on which a job bonus was paid and 3 days per week of shop time at 8 hours per day. Their total backpay amounts would be multiplied by .667 (14 / 21) to account for a 14 days on, 7 days off rotating schedule.

    b. <u>Grease</u>: Assume 16 hours worked for each day on which a job bonus was paid.

 3. <u>Tubular</u>: For each day in which a job bonus was paid, assume 12 hours worked for that day.

(This category does not include salaried employees who Defendants believe are exempt.)

**Category 6: Nonexempt field employees paid on an hourly basis plus a job bonus, and were paid overtime but the job bonus was not factored into the regular rate of pay.** For each Workweek during the Damages Period, these employees will be paid a backpay amount determined by multiplying overtime hours by the job bonus rate (determined by totaling job bonuses and dividing by the number of hours worked in the week) by one-half. The backpay amounts for each Workweek will be totaled to arrive at a total backpay amount for each employee. These employees will also be paid liquidated damages in an amount equal to the backpay amount. Defendants will determine job bonuses, the number of jobs worked per week, and hours worked per week using company pay records only.

 d. <u>Mailing of Settlement Awards</u>. Settlement Awards shall be mailed to the Settling Class Members within fourteen (14) days after the Effective Date.

 e. <u>Tax Treatment</u>. The Parties agree that fifty percent (50%) of each Settlement Award shall be treated as back wages paid by Defendants. Accordingly, on each Settlement Award, the Claims Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to fifty percent (50%) of each Settlement Award distributed, and Defendants shall pay the employer's share of all required Federal and State employment taxes such as but not limited to Federal FICA and FUTA taxes and the applicable state unemployment and disability and related taxes on such amounts. Defendants shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund (except to the extent that state(s) require payment(s) to be made directly by the employer) before the Settlement Awards are mailed to Settling Class Members on the date specified in this Agreement, in addition to the Gross Settlement Amount. Amounts withheld will be remitted by the Claims Administrator from the Qualified Settlement Fund to the appropriate governmental authorities as the federal and applicable state regulations permit. The remaining fifty percent (50%) of each Settlement Award shall be treated by all Parties as non-wage penalties and liquidated damages, to be reported to the Settlement Class Members on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. Defendants shall cooperate with the Claims Administrator to provide payroll tax information to the Claims Administrator as shall be necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the Form 1099 reporting for the non-wage portion of each Settlement Award.

f.  <u>Negotiability period</u>. All checks for Settlement Awards shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. All funds from checks not cashed will revert to the Qualified Settlement Fund maintained by the Claims Administrator. The Claims Administrator will include with the checks a letter stating that the check must be cashed or deposited within 180 days or it will be cancelled.

17.  <u>No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement</u>. No person shall have any claim against the Defendant Released Parties, the Named Plaintiffs, the Settling Class Members, Class Counsel, Defendants' Counsel, or the Claims Administrator based on distributions or payments made in accordance with this Settlement Agreement.

18.  <u>Remaining Monies</u>. The Parties agree that if, at the conclusion of the 180-day check negotiability period set forth in Paragraph 16(f) above, there are any monies remaining in the Qualified Settlement Fund, those monies shall revert back to Defendants to the extent allowable by applicable law. If applicable law does not allow monies to revert back to Defendants, the monies shall be handled in the manner mandated by the applicable law.

## EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT

19.  If the Court declines to enter the Preliminary Approval Order or Final Judgment approving this Settlement Agreement, or if the Court enters the Final Judgment and appellate review is sought and, on such review, the Final Judgment is reversed, vacated or modified in substance, then this Settlement Agreement shall be void unless both parties to this Agreement, within ten (10) business days from the date of the issuance of such ruling provide written notice to the other party of their intent to proceed with the Settlement.

20.  In the event this Settlement Agreement is terminated, the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status as of the date and time immediately prior to execution of this Settlement Agreement and they shall proceed in all respects as if this Settlement and related order had not been executed. The entire Gross Settlement Amount shall be returned to Defendants except that Defendants will pay for any costs incurred by the Claims Administrator as of the date of the termination of the Settlement Agreement.

21.  Except as provided in paragraphs 19 or 20 above, no party shall have the right to terminate this Settlement Agreement.

## MISCELLANEOUS

22.  <u>Various Proceedings Stayed</u>. The Parties agree to stay all proceedings in the Collective Action, except such proceedings as may be necessary to implement and complete the Settlement Agreement.

23. <u>No Admission of Liability</u>. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants of any fault or liability or wrongdoing. Defendants are entering into this Agreement to resolve disputed claims without the costs and risks involved in further litigation and expressly deny any and all liability.

24. <u>Amendment or Waiver Only in Writing</u>. Subject to Court approval, this Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest. No rights hereunder may be waived except in writing.

25. <u>Complete Agreement</u>. This Settlement Agreement and attached exhibits set forth the complete agreement between the Parties relating to the Settlement and any and all payments or obligations owed by Defendants to the Named Plaintiffs, Settlement Class Members, Class Counsel, or anyone else in connection with this Collective Action.

26. <u>Public Statement</u>. The Parties and their counsel agree that they will not issue any press releases or hold any press conferences or initiate any contact with the press, media or any industry association about this case and/or the fact, amount or terms of the Settlement. If the Parties or their counsel are contacted by the press, media or any industry association, they will respond only that the case has been amicably resolved to the Parties' mutual satisfaction.

27. <u>Authorization to Execute Agreement and Effectuate Settlement and Agreement to Cooperate</u>. Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate the terms hereof, and to execute any other documents required to effectuate the terms of this Settlement Agreement. The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

28. <u>Binding Upon Successors and Assigns</u>. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Settling Class Members and the Defendant Released Parties, as previously defined.

29. <u>No Prior Assignment</u>. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

30. <u>Governing Law</u>. All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of Texas and the United States of America, where applicable.

31. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts and by facsimile or email. All executed copies of this Settlement Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

32. <u>Exhibits</u>. The terms of this Settlement Agreement include the terms set forth in the attached exhibits, which are incorporated by this reference as though fully set forth herein. The exhibits to this Settlement Agreement are an integral part of the Settlement Agreement. Unless specifically provided otherwise in the exhibits to this Settlement Agreement, in the event of any conflict between the Settlement Agreement and the exhibits, the terms of the Settlement Agreement shall control.

33. <u>Construction</u>. The Parties believe the terms of the settlement as set forth in this Settlement Agreement are a fair, adequate and reasonable settlement of this Collective Action and have arrived at this Settlement Agreement in arms-length negotiations, taking into account all relevant factors. This Settlement Agreement has been drafted jointly by counsel for the Parties. Hence, in any construction or interpretation of this Settlement Agreement, the same shall not be construed against any of the Parties.

34. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

35. <u>Agreement of Named Plaintiffs</u>. The Named Plaintiffs agree not to object to or appeal any of the terms of this Settlement Agreement. Non-compliance by the Named Plaintiffs with this paragraph shall be void and of no force or effect. Any such objection shall therefore be void and of no force or effect.

36. <u>No Signature Required by Settlement Class Members on Settlement Agreement</u>. Because the Settlement Class Members are likely to be numerous, it is impossible or impractical to have each one execute this Settlement Agreement. The Class Notice will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Class Member.

37. <u>Titles and Captions of No Force</u>. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of this ___ day of March, 2013:

**Class Counsel, on Behalf of the Named Plaintiffs:**

_____   3-28-2013
On Behalf of                                 Date
Sico, White, Hoelscher & Braugh, L.L.P.


**Defendants:**

_____   4-1-2013
On Behalf of                                 Date
ALLIS-CHALMERS ENERGY INC., ALLIS CHALMERS TUBULAR SERVICES LLC F/K/A ALLIS-CHALMERS TUBULAR SERVICES, INC., ARCHER TUBULAR SERVICES LLC, ARCHER DRILLING LLC, ALLIS-CHALMERS MANAGEMENT LLC, ARCHER RENTAL SERVICES LLC, ARCHER PRODUCTION AND COMPLETION SERVICES LLC, ARCHER DIRECTIONAL DRILLING SERVICES LLC, AND ARCHER UNDERBALANCED SERVICES LLC